## A01A1876. ROBISON v. GEORGE.
(560 SE2d 108)

MILLER, Judge.

Michael Robison appeals from the trial court's order granting summary judgment to Stephen George and denying Robison's cross-motion for summary judgment. Robison contends that George's breach of contract claim is without merit and that the evidence establishes that Robison is entitled to summary judgment on his counterclaims for breach of contract and slander. Since the evidence reveals that the parties entered into a binding settlement agreement that was breached by Robison, and that Robison has failed to create any issue relating to his counterclaims, we discern no error and affirm.

Viewed in the light most favorable to Robison, the record reveals that in early October 1998, Robison hired George to perform general contracting and construction work on Robison's home. Pursuant to their oral agreement, Robison was to pay $20 per hour to George and his workers as well as an additional ten percent of labor expenses to pay for insurance. Robison claims that the parties also agreed that George was supposed to provide certain documentation before he would be paid, including receipts for items purchased, time sheets, lien waivers, proof of liability insurance, and a workers' compensation policy.

Even though George did not provide all of the requested documentation, he did provide invoices for his work, and for the first month of the project, Robison paid the invoices in full. On November 21, however, Robison received an invoice that he believed was inflated, which caused him to suspect that George had been overbilling him. Robison contacted George to discuss the bill and offered George two options to resolve the matter of the allegedly inflated bills: (1) provide Robison with reduced invoices, which Robison would pay, and continue with the project, or (2) allow Robison to pay only for expenses that George could verify to Robison's satisfaction and then be fired from the project. Although neither of these options was offered in writing, Robison claims that an additional prerequisite to George's payment under the first option was that George provide the same documentation that Robison had previously requested.

Evidence of the agreement to resolve the matter of the inflated bills includes a transcribed telephone conversation between Robison and George that took place after the discussion of the agreement. The transcript, which both parties agree is accurate, states in relevant part:

Robison: Well, Steve, let me, let me just say a couple of things before Kristy and I talk and decide exactly how we want to proceed. Uh, I, I just first of all have to say that I

was extremely shocked. I thought that when, you know, the, the forged payroll and other items were discovered by myself and confirmed and then I said to you, "you know, I, I can look past this because we need to be at our house. We're living in a hotel room and we need to get past this." I thought that that [sic] when I said that and you accepted my offer to forget it and move on and I asked you to go back and correct the time sheets. I didn't tell what, I didn't tell you what to put on them. I didn't say who to take off, I didn't tell you what hours to put, did I?

George: No sir.

Robison: I just asked you to go back and put what was right.

George: Right.

Robison: Then you came back the next day and you gave me what was right and obviously it was several thousand dollars short of what you had originally billed me and that was fine because that was what I had estimated that you had overstated the payroll and the other items. And at that point, in our opinion, all may not have been forgotten but certainly all was forgiven. We were ready to move on, we were ready to move ahead. . . .

Although George denied any overbilling and believed that the original invoices were accurate, he accepted the first option and submitted reduced invoices totaling approximately $21,000, which was several thousand dollars less than the total of the original invoices.

Robison wrote checks to George amounting to $20,925.76 for the reduced invoices. However, when Robison did not receive paperwork regarding the insurance and other items, and further suspecting that George had gone back to the work site and told workers to abandon the project because Robison had "shorted" them on their payroll money, Robison stopped payment on all of the checks.

George sued Robison for, among other things, breach of contract for Robison's failure to pay the $20,925.76. Robison counterclaimed for fraud, breach of contract, slander, conversion, and abusive litigation. George moved for summary judgment on his breach of contract claim and on all of Robison's counterclaims. Robison responded with a summary judgment motion of his own. The trial court granted summary judgment to George, awarding him $20,925.76, and denied Robison's motion.

In his sole enumeration of error, Robison contends that the trial court erred in denying him summary judgment and in granting summary judgment to George. More specifically, he argues that George provided self-serving testimony that contradicted the statements he made in his telephone conversation with Robison and that the self-

serving portions of George's testimony must therefore be disregarded. Robison further argues that once George's self-serving testimony is disregarded, the evidence reveals that George's breach of contract claim is without merit and that Robison is entitled to summary judgment on his breach of contract and slander counterclaims. We disagree.

When reviewing the grant or denial of summary judgment, we conduct a de novo review of the law and the evidence, construing the evidence and all reasonable deductions therefrom in favor of the non-movant. *Strozzo v. Coffee Bluff Marina Property*, 250 Ga. App. 212, 213 (1) (550 SE2d 122) (2001).

Parties are free to compromise disputes through private means prior to litigation (see *Smith v. Haverty Furniture Co.*, 173 Ga. App. 447, 448 (326 SE2d 812) (1985)), and oral settlement agreements between the parties are enforceable. *Poulos v. Home Fed. Sav. &c. Assn.*, 192 Ga. App. 501, 502 (1) (385 SE2d 135) (1989). Here, the evidence of the terms of the oral settlement agreement is the transcript of the telephone conversation between Robison and George, which shows the existence of such oral agreement. Cf. *Tranakos v. Miller*, 220 Ga. App. 829, 833 (1) (470 SE2d 440) (1996).

The evidence reveals that there was no term in the agreement for George to provide certain documentation before he would be paid. George only needed to provide reduced invoices, which he did, fulfilling his end of the agreement. Robison was then obligated to pay George, which he did not. The trial court therefore properly granted George summary judgment on his breach of contract claim.

In support of his argument to deny George summary judgment, Robison cites *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), to argue that portions of George's testimony must be disregarded because the testimony contradicts his statements in the telephone conversation with Robison. Robison's citation to *Prophecy Corp.* is misplaced. The *Prophecy Corp.* rule does not apply to unsworn statements. *Shiver v. Norfolk-Southern R. Co.*, 269 Ga. 168, 169-170 (496 SE2d 903) (1998). The transcript of the telephone conversation is not somehow transformed into sworn testimony simply because George verified the accuracy of the transcript during his deposition. Cf. id. ("By definition, testimony is the statement made by a witness under oath or affirmation.") (citation, punctuation and emphasis omitted). George only verified that the transcript was accurate; he was not under oath when the conversation itself took place. Robison's argument that the *Prophecy Corp.* rule applies in this case is without merit.

Since Robison first breached the settlement agreement by stopping payment on the checks for the completed work, his counterclaim for breach of contract when George later abandoned the project is

without merit. See, e.g., *Powers Ferry Constr. v. Commerce Builders*, 191 Ga. App. 327, 328 (1) (381 SE2d 755) (1989). George was not obligated to continue working on the project until he had been paid for all of his past work based on the reduced invoice and the parties were "ready to move on" as stated by Robison. Even if George abandoned the project, he would not be in breach of the settlement agreement until he had been paid for his past work.

Furthermore, since the settlement agreement establishes that Robison was willing to forgive George for all of his alleged past overbilling practices and other misdeeds on the construction contract, his counterclaims for fraud, conversion, and attorney fees are without merit. Settlement is generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, unless remaining claims are specifically reserved. *Ingram v. Star Touch Communication*, 215 Ga. App. 329, 330 (1) (450 SE2d 334) (1994). The settlement agreement indicated that "all was forgiven" once George provided the reduced invoices for his previous work. Since all of these counterclaims arise out of the past misconduct that was to be forgiven based on the settlement agreement, the trial court did not err by concluding that George was entitled to summary judgment on these claims.

Although Robison's remaining claim for slander did not arise out of the past misconduct that was the subject of the settlement agreement, it is also without merit. Slander is actionable based only on an untrue statement. See *Gillilan v. Still*, 199 Ga. App. 118, 119 (2) (404 SE2d 445) (1991). Robison admitted that the reduced invoices were thousands of dollars short of the original amount that had been billed for payroll and other items. To the extent that Robison's action for slander is based on George's statement to workers that Robison had "shorted" them on the payroll money that George believed that Robison owed them, the statement was true at the time it was made. Robison also admitted that any additional statements about Robison "shorting" George were made *after* Robison stopped payment on the checks, making those statements true at the time they were made as well. The trial court properly granted summary judgment to George on this counterclaim.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 11, 2002.

*Ransopher & Tedrick, Tad D. Ransopher, Christopher J. McFadden*, for appellant.

*Schulten, Ward & Turner, Kevin L. Ward, Nimesh B. Patel*, for appellee.