### 8490. GOOD ROADS MACHINERY CO. *v.* NEAL & SON.

1. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." Civil Code (1910), § 4222.

2. In order for a contract of purchase to become effective when entered into by correspondence through the mails, the offer to buy must be accepted by the seller unequivocally, unconditionally, and without variance of any sort, so that the minds of the parties shall meet and assent to the same thing in the same sense. *Robinson* v. *Weller*, 81 *Ga.* 704 (8 S. E. 447). If the terms of purchase as executed by the buyer are varied, the seller is privileged to repudiate the contract in its entirety, but a ratification of a part of the executed contract so varied is a ratification of the whole, and the contract as so altered becomes binding in its entirety upon each of the parties thereto. *Hunter* v. *Stembridge*, 17 *Ga.* 243 (1), 247; *Barclay* v. *Hopkins*, 59 *Ga.* 562, 566; *Howard* v. *Cassels*, 105 *Ga.* 412, 418 (31 S. E. 562, 70 Am. St. R. 44).

3. When it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties, where, from the language of the contract, the conduct of the parties, and all the attendant circumstances, it appears that the intention of the parties was that both should be bound by the sale, and substantial justice requires that the contract be given effect. Civil Code (1910), § 4268 (3); *Mill Wood & Coal Co.* v. *Flint River Cypress Co.*, 16 *Ga. App.* 636 (1),

637 (85 S. E. 943) ; *Mutual Life Ins. Co.* v. *Durden*, 9 *Ga. App.* 797 (3), 800 (72 S. E. 295).

4. Under a contract of conditional sale, providing that if default should be made in payment the vendee is to return the property to the seller, the former has not the right to return the goods upon the condition being broken. Upon such default by the vendee the seller has an option to demand return of the property, and the vendee has a duty to deliver it upon demand. *Finlay* v. *Ludden & Bates Southern Music House*, 105 *Ga.* 264 (2) (31 S. E. 180).

5. Where the contract involved is one that is covered by the statute of frauds, the complete contract, including an adequate description of the property purchased, must be in writing. But where the contract has been fully executed, the statute of frauds does not apply. Civil Code (1910), § 3222 (7). And where the terms of the sale are agreed upon and the bargain struck, and everything that the seller has to do with the goods is completed, the contract of sale becomes absolute and the property rests in the buyer. *Wholesale Mercantile Co.* v. *Jackson*, 2 *Ga. App.* 776, 782 (59 S. E. 106), quoting 2 Kent's Com. 491. However, the writing will itself furnish sufficient description of the property purchased, when it serves to separate it from the mass or gives such description as will render it capable of identification. *Huntington* v. *Chisholm*, 61 *Ga.* 270, 271. See also *Thomas Furniture Co.* v. *T. & C. Furniture Co.*, 120 *Ga.* 879 (48 S. E. 333).

DECIDED NOVEMBER 1, 1917.

Complaint; from Fulton superior court—Judge Pendleton. January 9, 1917.

This action was by the Good Roads Machinery Company against a partnership composed of W. A. Neal Sr. and W. A. Neal Jr., and was based on a contract for the purchase of machinery, evidenced by four letters embodied in plaintiff's petition. An oral motion by defendants to dismiss the action, on the ground that no cause of action was set forth, was granted. This order of dismissal is the error complained of. The letters referred to are as follows:

"128 Marietta St., Atlanta, Ga., Jan. 24, 1911.
"The Good Roads Machinery Co., Kennett Square, Pa.
"In Re St. Lucie County, Fla., Claim.

"Gentlemen: We have Mr. Phillips' letter of December 27th, in reference to above claim. We have been delaying answering this letter, hoping that we would be able to have a personal conference with the Port Huron people, and in this way get them to make some concession toward taking the machinery back. We have not been favored with this conference up to this time, and we do not believe now that any good would come from the conference any-

11

way, for the reason that the Port Huron people are reorganizing their company, having replaced Mr. Peavy, former general manager, with a new man, and we don't believe we would be able to reach the Port Huron people upon any proposition whatever looking to the taking back of the machinery and allowing anything for it.

"We also have Mr. Phillips' letter of 20th inst., the latter part of which refers to the St. Lucie County notes. You ask that we return the warrants to your office, and that you will have them looked after by your collector and at our expense. Of course we can and will return the notes whenever you say so, but ask that you give us another opportunity to see what can be done toward settling the matter ourselves. We are sure that we can get it adjusted much better than you can. We are making an appointment with these people for February 15th, and are writing them by this mail for a full meeting of the board.

"Now, the proposition that we want to make to you and to the St. Lucie County people is this: We will be forced to make these people some kind of a concession. They will not pay the whole amount unless we help them dispose of the machinery in some way, as they consider the machinery absolutely worthless; and we must say, from their inability to manage this kind of machinery, we fully agree that it is absolutely worthless to them. However, we built one half mile of road with it, and did it well, but they are not able to handle it as we did.

"Now, we believe we can get these people to pay the full amount of your claim, which is covered by three warrants, by allowing them $2,000.00 for the machinery and taking it back; and if you will consent to this, we will take the machinery at $2,000.00 and pay you 6% interest on same from time we make settlement with them. We will ship the machinery to Atlanta, repaint and overhaul it and put it in our warehouse, and will guarantee to pay you the $2,000.00 within 12 months, with 6% interest; and if we fail to do this, we will turn the machinery over to you. It is going to cost us at least $500.00 to load the machinery and deliver it in Atlanta, besides $200.00 or $300.00 to overhaul it and put it in good condition to be sold; the machinery to be your property until you receive the $2,000.00 from us.

"Now, we believe that we can make this settlement with these

people; and if you agree with us and are willing to accept this proposition, kindly mail us the other warrant, and we will meet the board on February 15th and endeavor to get the whole matter in shape.     "Yours truly, W. A. Neal & Son, per W. A. Neal."

"Kennett Square, Pa., Jan. 27, 1911.

"W. A. Neal & Son, Atlanta, Ga.

"Re St. Lucie, Florida, Claim.

"Gentlemen: Replying to your favor of the 24th, are we to understand from what you have written that the Port Huron Company will not stand behind their guarantee? Is there any reason that you know of why we should suffer loss by reason of your taking back any part of the St. Lucie County machinery that we were not interested in the manufacture of? We understood that the Port Huron people were reorganizing their business, but we have not heard why they are replacing Mr. Peavy with another manager, and will be much interested in having you advise us why they seem to think it necessary to replace Mr. Peavy.

"I am sure that you can adjust the St. Lucie County matter much better than we, and wish to say that the only reason I ask for the return of the St. Lucie County warrants is because they have been in your possession since October, 1910, more than three months, and we have not as yet any kind of a settlement.

"If you can make a settlement with the St. Lucie County people on the basis outlined in your letter and get them to pay the full amount of our claim covered by the three warrants, one for $2180.00 that was due April 19th, 1909, one for $2300.00 that was due April 19th, 1910, and one for $2420.00 that will be due April 19th, 1911, less $2000.00 for the machinery, and if you will take the machinery at $2000.00 and pay us interest on the same from the date you make settlement with them, and the St. Lucie County people will pay interest on the overdue warrants from the date they were due until the date you secure settlement of them, that will be satisfactory to us; but this matter must be closed up soon.

"We are willing to have you make settlement with the St. Lucie County people on the basis of the contents of your letter to us.

"Awaiting your further valued favors and reports on this important subject, we are yours very truly, The Good Roads Machinery Co. Per S. Jones Phillips, President."

"128 Marietta St., Atlanta, Ga., Feb. 22, 1911.
"The Good Roads Machinery Co., Kennett Square, Pa.
"In Re St. Lucie County, Fla., Claim.

"Gentlemen: Enclosed you have N. Y. exchange for $2480.00 in settlement for two warrants which we had in our possession, given by St. Lucie County, one for $2180.00, due April 19th, 19th, 1909, and the other for $2300.00 due April 19th, 1910. This N. Y. exchange covers these two warrants, less $2000.00 which we allowed them for the machinery, as per your recent letters. We did our best to get these people to pay us interest on these warrants. The $2180.00 warrant had 10 months' interest due, and the $2300.00 warrant had 20 months' interest due, but their attorney advised them that under the law they could not pay any interest on the warrants. They were willing to pay it, but the attorney would not let them do so. The other warrant, which is due April 19th, 1911, they will renew when it becomes due by giving you a warrant due one year after date and adding interest to the face of the warrant. This, the attorney said, they could do, but they could not give us the interest on the warrants which were past due. We told them if they would not give us interest on the warrant which was not due, that they would simply have to pay the cash when the warrant is due. They finally agreed to add the interest to the face of warrant, and made this a part of their records and placed it on their minutes. You will, therefore, please forward to C. H. Edwards, Chairman, Fort Pierce, Fla., the warrant not due, and he will issue you a time warrant due April 19th, 1912, with interest at rate of 6% from maturity for one year added to the face of the warrant, which makes the new warrant $2565.20.

"We had a hard fight with these people to get this business settled up without a lawsuit, and we had to take the machinery at $2,000.00 and go to the expense of loading it, which is going to cost us between $400.00 and $500.00. It is in the country, away from the railroad, is in bad shape; labor is scarce and hard to get at any price; but rather than have a lawsuit we agreed to accept the machinery; and in carrying out agreement with you, we will load it ourselves and pay you $2,000.00 within 12 months, and try to handle it as best we can. We thought it best to do this than to be forever attending board meetings, courts, etc., as we

would lose more time and money attending these meetings than it would cost us to load, manipulate, and sell the second-hand stuff.

"We trust the settlement is entirely satisfactory.

"Yours truly, W. A. Neal & Son, per W. A. Neal."

"Kennett Square, Pa., Feb. 27, 1911..

"W. A. Neal & Son, Atlanta, Ga., Re Note No. 14284.

"Gentlemen: Replying to your favor of the 22nd inst., we acknowledge with thanks the receipt of the New York draft for $2480.00, which amount we are passing to the credit of the proper account.

"We have secured from the present holder and owner possession of the St. Lucie County warrant, our No. 14284, which calls for the payment of $2420.00 and which is due April 19th. We do not know from the contents of your letter whether to send this warrant to Mr. Edwards at once or not until about April 19th, 1911, when it is due. How would it do for us to write him a letter and ask him to send us a warrant for $2565.20, and on receipt of which we will promise to turn the same over to the present owner of warrant No. 14284 and cancel our indorsement on the same and send it to him? I think we will write Mr. Edwards a line about the matter, and then we will be governed in our actions by what he may say in reply to our letter. We will either arrange to send him this warrant upon receipt of request to do so, or upon receipt of a new warrant, whichever he may advise.

"We think this action on our part will be acceptable and satisfactory to you.

"Yours very truly, The Good Roads Machinery Co., per S. Jones Phillips, President."

*P. B. D'Orr*, for plaintiff.

*E. V. Carter, Frank Carter, E. V. Carter Jr.*, for defendants.

JENKINS, J. (After stating the foregoing facts.) Applying the law as stated in the foregoing headnotes, we think the correspondence set forth in the petition contained all the essentials of a valid contract. Counsel for the defendants insist that the plaintiff, in accepting the check for $2480 and placing that amount to the proper account as stated in their letter, merely ratified the acts of defendants as their collecting agents in the settlement had with St. Lucie County, and did not thereby do

any act which could be taken to ratify a purchase of the machinery by the defendants. We think that when the defendants in the first of the letters, dated January 24th, proposed that the claim of the plaintiff against St. Lucie County should be settled by its collection in full on the basis of allowing a credit to the county of $2,000 for the machinery, with the understanding that the machinery was to be taken over by defendants at that price, and in reply to that letter the plaintiff stated, "We are willing to have you make settlement with the St. Lucie County people on the basis of the contents of your letter to us," this correspondence covered the entire proposition, notwithstanding the fact that the plaintiff may have amplified its acceptance by stating that interest on the St. Lucie County overdue warrants should be included in the settlement; and when, on February 22d, the defendants again wrote to the plaintiff, enclosing a check for the warrants in accordance with the terms of the agreement, except that no interest thereon had been collected or was included, which omission the defendants explained in this letter, and at the same time notified the plaintiff that they had taken over the machinery at the price agreed on in the previous letter, and promised to pay therefor, if any alteration was made in the execution of the original contract, the plaintiff, by accepting the payment made under the statement given, ratified and confirmed the altered terms of the agreement as executed. The basis of the understanding whereby the plaintiff agreed to allow St. Lucie County a credit of $2,000 for the machinery was that the defendants should take it over at that price; and when the defendants executed the proposed settlement and took in the machinery for themselves as indicated by their letter, forwarding the amount due under the warrants, less the allowance made for the machinery, the plaintiff by accepting that amount ratified the omission of any interest provided for by the original contract, to which its attention was then called. We also think that the property was sufficiently identified when described as the machinery sold to St. Lucie County, Florida. Especially is this true when it appears from the defendants' letter of February 22d that they had actually taken possession of the same. It appearing to us, from the language of the contract, the conduct of the parties as indicated by the letters, and all the attendant circumstances, that it was the intention of each of the

parties to be bound by the sale, and, in our opinion no rule of law contravening, we think effect should be given to the agreement; and we therefore differ with the learned trial judge in his holding that the petition failed to set forth a cause of action.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*