## 51168, 51197. CHARTER INVESTMENT & DEVELOPMENT COMPANY v. URBAN MEDICAL SERVICES, INC.; and vice versa.

DEEN, Presiding Judge.

The defendant corporation entered into a contract with the appellant (here referred to as CID) to procure a mortgage loan with the proceeds of which it intended to construct a private hospital. The contract provided: "The undersigned further agrees to pay the agent for services rendered an amount equal to 2% of the loan amount as a brokerage fee. The brokerage fee shall be due and deemed earned upon issuance of commitment substantially in accordance with the terms of this application, or upon the

acceptance by applicant of the commitment issued. Brokerage shall be payable in full from 1st draw of construction loan." CID obtained a commitment from a mortgage lender on which the defendant noted acceptance, but which commitment was hedged with a number of stipulations which the defendant contended and the trial court found rendered it unenforceable. It was eventually abandoned and Urban obtained a loan from another source. CID sued for the brokerage fee. *Held:*

1. "Merely negotiating a conditional agreement does not invest a broker with a right to a commission; he does not become entitled to a commission unless, and until, the condition is fulfilled or waived." 12 CJS 198, Brokers, § 86 (c).

2. An alleged contract on which there is no firm agreement as to the cost is unenforceable. *Malone Const. Co. v. Westbrook,* 127 Ga. App. 709 (194 SE2d 619); Code § 20-107.

3. Contracts dependent upon a decision as to whether a cost to be determined in the future is feasible in the untrammeled discretion of one party are generally lacking in mutuality. *Clayton McLendon, Inc. v. McCarthy,* 125 Ga. App. 76 (186 SE2d 452).

4. The appellant would not be entitled to prevail in this contract action for a commission of 2% of the loan commitment procured by it unless it was able to establish the dollar value of such commitment, where the loan was never in fact made. The three letters relied upon in this case as establishing the contract between Urban Medical Services and the mortgage lender are not sufficient to establish that the base figure on which the 2% brokerage commission was to be paid would in fact have been $3,000,000. One of the stipulations contained therein was that there be an independent analysis and approval of feasibility, prior to closing, by a named third party, and that "in no event will the loan amount exceed 60% of the estimated fair market value determined by said appraisal." A maximum building cost was tentatively assessed by this entity at a figure somewhat lower than the portion of the $3,000,000 intended to be allocated to building cost, and a land appraisal was rejected as failing to support the land value. It is thus clear that there was no

final meeting of the minds as to the exact amount to be loaned, on which figure the plaintiff's 2% brokerage fee must depend.

5. In finding the loan commitment unenforceable as lacking mutuality of obligation, the trial court pointed out two other objections which, without going into a lengthy summary of evidence, we find well taken. There were in the letters many stipulations and conditions; the lender was not obliged to close unless all stipulations capable in its exclusive judgment of being satisfied prior to the closing had been satisfied. No guidelines are afforded as to which conditions the parties might have had in mind. Again, the lender need not close until both it and a third party approved the defendant's plans and specifications, but the "commitment" does not set out any details of specifications. In fact, at the time the defendant broke off negotiations, it had just received from the named third party a letter containing some 40 objections to the plans submitted in the meantime.

As was pointed out in the special concurrence to *Clayton McLendon, Inc. v. McCarthy,* supra, where a contract specifies conditions which may be accepted or refused in the discretion of one of the contracting parties (as where work must be done "to his satisfaction"), such discretionary acceptance may take the form of either a condition precedent or subsequent. If the former, no rights arise until the discretion is exercised; if the latter, the contract "is valid until the contracting party exercises his discretion to annul it, the burden then being on the opposite party to show that the discretion was not fairly exercised if he wishes to insist on enforcement." Id., p. 79. The conditions relating to consideration (the amount to be loaned) and to subject matter (plans and specifications for the hospital to be built with the proceeds on land which was to be sold to the lender and which it was to lease back to the corporation) were not fully determined, and the determination was left to the discretion of the lender and the named third party. Not only could the commitment not be "closed" until all these details were worked out; until they were agreed upon they constituted conditions precedent to a contract which, being left to the discretion of one contracting party only, did not constitute a binding

contract between the corporation and the lender, nor one upon which the broker could with any exactitude figure a 2% commission.

The trial court properly entered judgment in favor favor of the defendant.

*Judgment affirmed in main appeal; dismissed in cross appeal. Evans and Stolz, JJ., concur.*

ARGUED SEPTEMBER 29, 1975 — DECIDED OCTOBER 23, 1975.

*Harland, Cashin, Chambers & Parker, Terrill A. Parker,* for appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, R. Alexander Bransford, Jr., Matthew H. Patton,* for appellee.

