A99A1446. McCOLLUM v. O'DELL.
(525 SE2d 721)

RUFFIN, Judge.

This case presents a perfect example of what happens when lay persons exercise their right to draft a legal document. Glenn McCollum sued Robert O'Dell to recover amounts allegedly due on a loan agreement contained in a handwritten document. McCollum claims he loaned the money to a partnership of which O'Dell was a partner. O'Dell maintains that the loan was made to his partner, Basile Antonelli, individually rather than to the partnership. Following a bench

---

trial, the trial court ruled in favor of O'Dell, and McCollum appeals. Because the trial court's ruling rests upon an erroneous legal theory, we reverse and remand.

The record demonstrates that O'Dell and Antonelli formed a partnership for the purpose of opening a restaurant. Although the two men intended to incorporate the restaurant, the paperwork was never completed.

In December 1995, Antonelli and O'Dell executed what purports to be a contract with McCollum. The handwritten document, which was prepared by Antonelli in collaboration with McCollum, stated:

> This agreement between Glenn McCollum and Antonelli's Restaurant Inc. is borrowing [sic] the sum of twenty five thousand dollars from Glenn McCollum.
>
> Payment agreement between parties is monthly payment of 650.00 per month starting with the first payment due Jan. 1, 1996 for the total payments of 48 months for total amount of thirty one thousand and two hundred dollars.
>
> Antonelli's Inc is giving a 6 month option for Glenn McCollum to come in as a full partner starting date Jan. 1, 1996 expiring July 1, 1996 for the total sum fee of one hundred and twenty five thousand dollars paid into Antonelli's corp. as Glenn McCollum options if during 6 month grace period expires Glenn McCollum has the option to refuse partnership and Antonelli will continue to make payments to 48 month contract.
>
> Glenn McCollum [signature]
>
> Bob O'Dell [signature]
>
> Basile Antonelli [signature]

On the bottom right of the document was a corporate seal for Antonelli's, Inc.

O'Dell deposited the $25,000 check into the business checking account. The restaurant failed, and McCollum was not repaid.[1]

During the bench trial, the parties offered different accounts as to whom the loan was made. O'Dell testified that the loan was to Antonelli, individually. McCollum, on the other hand, stated that he loaned the money to both O'Dell and Antonelli for use by the business. Antonelli agreed with McCollum, testifying that the loan was a business loan rather than a personal loan. According to Antonelli, he

---

[1] McCollum testified that the outstanding balance is $29,950.

thought the business had been incorporated when he signed the contract.

The trial court found in favor of O'Dell. In its order, the court noted that the contract, which appeared to be between McCollum and Antonelli's Restaurant, Inc., did not specify that O'Dell agreed to borrow or repay the money. The court further found that O'Dell

> testified he signed the document only in a corporate officer capacity. There is a corporate seal for "Antonelli's Inc." embossed on the right bottom corner of the document, supporting [O'Dell's] assertion. [O'Dell] testified that he had paid an attorney to incorporate the business and believed it was incorporated at the time he signed the document, although he learned later the attorney had failed to perform the incorporation.

Finally, the trial court noted O'Dell's trial testimony that he had put more money into the business than his partner, Antonelli, and that the loan was Antonelli's contribution to support the business. For these reasons, the trial court concluded that McCollum had "not met his burden of proving by a preponderance of the evidence that [O'Dell] was obligated for this loan."

1. In his first enumeration of error, McCollum contends that the trial court erred in its factual findings. Specifically, McCollum argues that the trial court erred in finding that O'Dell (1) believed that the business had been incorporated when he signed the contract; and (2) signed the contract only in his capacity as a corporate officer. We agree.

Following a bench trial, we defer to the trial court's factual findings unless they are clearly erroneous.[2] We will not disturb those findings if there is any evidence to sustain them.[3] Here, there is no evidence supporting the trial court's finding that O'Dell thought the business had been incorporated when he signed the contract. To the contrary, O'Dell testified unequivocally that the business was never incorporated and that he knew, at the time he signed the contract, that the business was operating as a partnership. As O'Dell knew no corporation existed, he cannot be said to have signed the contract in his corporate capacity.[4] Accordingly, the trial court erred in this regard.[5]

---

[2] *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 643 (4) (507 SE2d 823) (1998).

[3] Id.

[4] Because McCollum did not raise the issue of O'Dell's liability under OCGA § 14-2-204, we do not address this on appeal.

[5] See *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539, 541-542 (287 SE2d 577) (1981).

2. In his second enumeration of error, McCollum asserts that the trial court erred in concluding that, under the contract, O'Dell was not personally liable for repayment of the loan. "An issue of contract construction is at the outset a question of law for the court."[6] The first step is to look to the four corners of the instrument to determine the meaning of the agreement from the language employed.[7] If the contract language is ambiguous, however, then the court must apply the applicable rules of construction.[8] "The cardinal rule of contract construction is to ascertain the intention of the parties."[9] If, after applying the rules of construction, the language remains ambiguous, then the finder of fact must resolve the ambiguity.[10]

Here, the inexpertly drafted contract is ambiguous in at least two respects. First, the contract is ambiguous regarding the nature of the business entity. Although the contract refers to the entity as "Antonelli's Restaurant Inc.," "Antonelli's Inc.," and "Antonelli's corp.," the contract also contains a clause granting McCollum an option to become a "full partner" and refers to the business as a "partnership."

Because the nature of the business entity is ambiguous, we turn to the rules of contract construction and attempt to ascertain the intention of the parties by reading the contract as a whole. But the contract in this case is so poorly worded that the rules of construction are not helpful in ascertaining the intent of the parties. Thus, we must look to parol evidence.[11] According to O'Dell's uncontradicted testimony, the business was a partnership rather than a corporation when the contract was signed.

Equally ambiguous is to whom the loan was made. The first sentence of the purported contract states that the agreement is "between Glenn McCollum and Antonelli's Restaurant Inc.," which indicates that the loan was to a business. But the contract subsequently provides that, if McCollum does not exercise his option to join the business, "Antonelli will continue to make payments." This sentence may be read to mean that the loan was to Antonelli, individually, rather than to the business.

At trial, the parties offered widely differing accounts as to who was intended to be liable for repayment of the loan. Thus, the finder of fact is entitled to choose whose version to believe. If, as Antonelli and McCollum testified, the loan was a business loan, then O'Dell

---

[6] *Grier v. Brogdon*, 234 Ga. App. 79, 80 (2) (505 SE2d 512) (1998).
[7] *Terry v. State Farm &c. Ins. Co.*, 269 Ga. 777, 778-779 (2) (504 SE2d 194) (1998).
[8] *Grier*, supra.
[9] (Punctuation omitted.) *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. 240, 242 (1) (503 SE2d 877) (1998).
[10] Id.
[11] *Bell v. Sasser*, 238 Ga. App. 843, 851 (2) (520 SE2d 287) (1999).

would be liable because the business was a partnership and "all partners are jointly and severally liable for all debts, obligations, and liabilities of the partnership."[12] But if, as O'Dell testified, the parties intended that the loan was to Antonelli individually, then O'Dell would not be liable for repayment.[13]

In its order, the trial court made no specific factual findings regarding the intent of the parties. Moreover, the court seemed to conclude that O'Dell signed the contract in a corporate capacity. As O'Dell knew that no corporation existed, he could not have signed the document in such capacity. Thus, the court's judgment appears to have been based upon erroneous legal reasoning. "[T]he court's judgment in a non-jury trial will be reversed where it is apparent that it rests on erroneous reasoning or on an erroneous legal theory."[14] Accordingly, the judgment of the trial court is reversed. On remand, the trial court, as the factfinder, must address whether the parties intended that the loan be made to the business or to Antonelli individually.

*Judgment reversed and remanded with direction. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 18, 1999.

*Jon A. Green*, for appellant.
*Moulton & Massey, Terry N. Massey*, for appellee.

---

[12] OCGA § 14-8-15 (a).
[13] See *Willard v. Stewart Title Guaranty Co.*, 264 Ga. 555 (448 SE2d 696) (1994) (partner not liable for note even though note executed " 'in furtherance of the goals of [the] partnership' ").
[14] *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. 710, 721 (4) (445 SE2d 782) (1994).