A01A1675. SHERIDAN v. CROWN CAPITAL CORPORATION.
(554 SE2d 296)

ELDRIDGE, Judge.

This is an appeal from cross-motions for summary judgment in an interpleader action brought by Christopher B. Manos, Jr., P.C., escrow agent, holding $25,000 in earnest money for the purchase of property, between Paul Sheridan, seller, and Crown Capital Corporation, purchaser, because Crown refused to go through with the purchase of 2.26 acres of commercial real estate and buildings in Carrollton, Carroll County, for $1,075,000. Crown, the author of the contract, contended that it had the right to a free look at the property under the agreement; had the right "to determine if the Property is satisfactory for the Purchaser's intended use" by inspection of the property; and had the right to terminate for failure to secure an anchor tenant, making the property development unsatisfactory. Sheridan contended that the inspection provision limited the satisfactory intended use to conditions set forth in the clause for inspection and for the commercial use of the property and did not include economical feasibility for any reason. The trial court erroneously granted summary judgment to Crown and against Sheridan. We reverse.

The property was zoned commercial, containing commercial buildings on the 2.26 acres. On August 24, 1998, the agreement prepared by Crown's representatives was executed by Crown's president and presented to Sheridan as an offer to purchase the property as zoned. On September 4, 1998, Sheridan accepted the offer and executed the agreement. Crown deposited $25,000 as earnest money with Christopher B. Manos, Jr. as escrow agent. Crown had 120 days from the acceptance to inspect the property and to determine if it was satisfactory to its intended use under the agreement. After the one hundred twenty-first day, Crown had to deposit an additional $75,000 in earnest money, unless it had earlier given notice of termination after inspection if the property was not satisfactory to the purchaser's intended use.

On December 8, 1998, Crown gave notice that

[t]he undersigned represents Crown Capital Corporation, Purchaser under the above-referenced Contract. Pursuant

to Section 8 (a) of the Contract, this letter shall constitute notice to Seller that Purchaser [sic] that the Property is unsuitable for the intended use, and that Purchaser hereby terminates the Contract, effective immediately.

Cub Foods, a potential anchor tenant of Crown's, withdrew its interest; this caused the development, and not the property, to be economically unsuitable for Crown's development, because now the development was "not economically feasible for any reason." Thus, Crown exercised what it believed was its opportunity (free look) to tie up the property for 120 days under what it believed was its absolute discretion to terminate the agreement for any reason without any liability, but there was no inspection performed for it.

1. Sheridan contends that the trial court erred in granting summary judgment to Crown. We agree.

Ambiguity exists when a contract is uncertain of meaning, duplicitous, and indistinct; or when a word or phrase may be fairly understood in more than one way, such constitutes ambiguity. *Verret v. ABB Power T & D Co.*, 237 Ga. App. 492, 493 (1) (515 SE2d 435) (1999). Here, the trial court construed "satisfactory to the Purchaser's intended use" as any discretionary use by Crown; however, Sections 8 (a) and 10 (c) of the contract construed together limited such use to commercial shopping center development only. Multiple meanings for a phrase constitute ambiguity on the face of the agreement. The meaning of "satisfactory for the Purchaser's intended use" under Section 8 (a) is ambiguous although the language, itself, is undisputed. *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 673 (357 SE2d 100) (1987). To determine if there is any ambiguity, the trial court must look to the four corners of the instrument to determine the meaning of the agreement from the language employed. *McCollum v. O'Dell*, 241 Ga. App. 6, 9 (2) (525 SE2d 721) (1999). Identifying that an apparent ambiguity exists, the trial court must next seek to resolve the ambiguity through the application of the rules of construction. Id.

Therefore, the trial court as a matter of law had the duty to ascertain the intent of the parties by applying the rules of construction of contracts to determine if the ambiguity remains unresolved. OCGA §§ 13-2-1; 13-2-2; 13-2-3; *Early v. Kent*, 215 Ga. 49, 50 (108 SE2d 708) (1959); *Farm Supply Co. &c. v. Cook*, 116 Ga. App. 814, 816 (1) (159 SE2d 128) (1967). The trial court must engage in a three-step analysis: first, the court must decide if the contract language is unambiguous, and, if so, the court enforces the contract's clear terms; second, if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity; and third, if the ambiguity remains after use of the construction rules, the meaning of the

contract must be decided by a jury. *Caswell v. Anderson*, 241 Ga. App. 703, 705 (527 SE2d 582) (2000). Here, the trial court erred in finding no ambiguity and attempting to enforce the contract without the aid of the rules of construction; this caused the trial court to erroneously conclude that this was an unenforceable contract for lack of mutuality and the exercise of a discretionary right to terminate.

The cardinal rule of construction is to ascertain the intent of the parties, which is to formulate an enforceable agreement. *Mut. Life Ins. Co. &c. v. Davis*, 79 Ga. App. 336, 339 (1) (53 SE2d 571) (1949). A key element of contract construction is that the trial court must give a fair and reasonable construction to the contract that upholds the contract rather than causing it to have no binding effect, because the intent of the parties is to enter into a valid contract and not an unenforceable illusionary agreement. *Kilburn v. Patrick*, 241 Ga. App. 214, 217 (1) (525 SE2d 108) (1999); *Bd. of Regents v. A. B. & E., Inc.*, supra; *Smiths' Properties v. RTM Enterprises*, 160 Ga. App. 102, 103 (2) (286 SE2d 334) (1981). The construction of the contract should "give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981); see also OCGA § 13-2-2 (4); *Rice v. Huff*, 221 Ga. App. 592, 593 (1) (472 SE2d 140) (1996).

"When it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties." *Good Roads Machinery Co. v. Neal & Son*, 21 Ga. App. 160, hn. 3 (93 SE 1018) (1917). "[T]he law will not construe a contract so as to give [one party] the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached, and that such was the intention of the parties." (Citation omitted.) *Finlay v. Ludden & Bates Southern Music House*, 105 Ga. 264, 267 (31 SE 180) (1898).

Contracts are construed most strongly against the drafter, which, here, was Crown. OCGA § 13-2-2 (5); *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990); *Hill v. John P. King Mfg. Co.*, 79 Ga. 105, 109 (4) (3 SE 445) (1887); *Marjon Assoc. v. Leasing Intl.*, 174 Ga. App. 679, 680 (1) (331 SE2d 20) (1985). Thus, Section 8 (a) should be construed in pari materia with Section 10 (c) so that satisfactory use intended by the purchaser is defined and limited to "[u]se of premises as a commercial shopping center development" and not an unrestricted discretionary use that would permit the destruction of the contract without contractually defined justification. Further, the inspection under Section 8 (a) specifies determination of those physical conditions of the property necessary to the

development for a commercial shopping center. The agreement was not an illusion, terminable on the exercise of unfettered discretion by Crown, as Crown would have us believe, but a binding contract.

Thus, the contract must be construed as a whole rather than in separate and distinct parts, giving effect to all terms; the contract should not be determined by examining isolated clauses and provisions as the trial court has done. *Sage Technology v. NationsBank N.A. South*, 235 Ga. App. 405, 407 (1) (509 SE2d 694) (1998). Therefore, Section 10 (c) must be construed with Section 8 (a) to disclose the intent of the parties as to the purchaser's intended use, i.e., use as a commercial shopping center development. *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744 (2) (149 SE2d 511) (1966); *Candler Investment Co. v. Cox*, 4 Ga. App. 763, 766 (1) (62 SE 479) (1908). When the four corners of the instrument are searched, the meaning of the purchaser's intended use becomes clearly manifest as the intent of the parties from construing Section 8 (a) with Section 10 (c). See *McCollum v. O'Dell*, supra at 6. Thus, economic unsuitability for use intended by failure to obtain an anchor tenant was never within the manifest intent of the parties as a meaning of "use intended" when the limited scope of the purpose of the inspection under Section 8 (a) and of the development under Section 10 (c) are construed together. The purchaser did not have any discretion as to the use intended outside the commercial shopping center development, because Section 8 (a) limited satisfactory use intended to the physical conditions of the property revealed on inspection as set forth in such paragraph for the development of the property.

Where the purchaser of real estate provides earnest money but had a discretionary contingency in the sales contract, there exists no mutuality of obligation, because there is no binding promise for a promise as mutual consideration; however, earnest money constitutes consideration for the promise to sell rather than a contingent promise to buy, because it is something of value in return for the promise to sell. See *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980). Any consideration by the purchaser for the seller's promise to sell satisfies the need for consideration rather than mutuality of obligation of an unconditional promise for a reciprocal unconditional promise. *Koets, Inc. v. Benveniste*, 169 Ga. App. 352, 353 (1) (312 SE2d 846) (1983), aff'd, 252 Ga. 520 (314 SE2d 912) (1984).

> [W]here there is no other consideration for a contract, the mutual promises must be binding on both parties, for the reason that only a binding promise is sufficient consideration for a promise of the other party. But where there is any other consideration for a contract so that each promise does not depend upon the other for consideration, mutuality of

obligation is not essential. Mutuality is not required where there is consideration other than mutual promises.

(Citations, punctuation and emphasis omitted.) *Brack v. Brownlee*, supra at 819.

The trial court erred in granting summary judgment to Crown.

2. Sheridan contends that the trial court erred in denying his cross-motion for summary judgment. We agree.

As held in Division 1, which controls this Division as well, the physical ability to develop a commercial shopping center on the land was the satisfactory use the purchaser intended and not any discretionary use intended by the purchaser, because the contract did not give the purchaser such unrestricted discretion as to use, including economic feasibility; thus, unsatisfactory economic use was not within the expressed intent of the parties under the four corners of the agreement and cannot be implied by the trial court to revise the contract. *Crooks v. Crim*, 159 Ga. App. 745, 748 (285 SE2d 84) (1981). Thus, the effect of the right to inspect must be further analyzed to determine what type of condition the agreement contained.

"No precise technical words are required to create a condition subsequent." *Munford, Inc. v. C & S Nat. Bank*, 151 Ga. App. 112, 113-114 (258 SE2d 766) (1979); see also *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (1) (388 SE2d 916) (1989). "The law favors conditions to be subsequent rather than precedent and to be remediable by damages rather than by forfeiture." OCGA § 44-6-41; *Fulton County v. Collum Properties*, supra; see also *King Indus. Realty v. Rich*, 224 Ga. App. 629, 631 (3) (481 SE2d 861) (1997); *McDuffie v. Criterion Cas. Co.*, 214 Ga. App. 818, 821 (449 SE2d 133) (1994). "[A c]ondition may be precedent or subsequent. . . . The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties." OCGA § 13-3-4. A condition subsequent to an enforceable contract is a term of the contract within the intent of the parties that the happening or nonoccurrence of an event after the contract becomes binding upon the parties, which, by pre-agreement of the parties, causes the contract to terminate without further duties and obligations on any party. *Dept. of Human Resources v. Citibank*, 243 Ga. App. 433, 436-437 (534 SE2d 422) (2000); *Charter Investment &c. Co. v. Urban Med. Svcs.*, 136 Ga. App. 297, 299 (5) (220 SE2d 784) (1975).

[W]here a contract specifies conditions which may be accepted or refused in the discretion of one of the contracting parties (as where work must be done "to his satisfaction"), such discretionary acceptance may take the form of either a

condition precedent or subsequent. If the former, no rights arise until the discretion is exercised; if the latter, the contract "is valid until the contracting party exercises his discretion to annul it, the burden then being on the opposite party to show that the discretion was not fairly exercised if he wishes to insist on enforcement." [*Clayton McLendon, Inc. v. McCarthy*, 125 Ga. App. 76, 79-80 (186 SE2d 452) (1971) (Deen, J., concurring specially).]

*Charter Investment &c. Co. v. Urban Med. Svcs.*, supra at 299 (5).

This agreement clearly provided for a condition subsequent for the termination of the contract in the event that the inspection of the property revealed that the property could not be satisfactorily physically developed for commercial shopping center use. If the physical condition of the land would not permit development as a commercial shopping center, revealed upon timely inspection and notice, then the agreement terminated automatically upon such notice by the purchaser to the seller. In the event that no inspection was made, the condition subsequent could not be invoked to terminate the contract. In this case, no inspection was ever made by the purchaser nor were any physical conditions identified that could prevent the development of a commercial shopping center by Crown had an inspection been timely conducted. Thus, the condition subsequent never occurred.

Therefore, under the express terms of the agreement, Crown's notice of unauthorized termination and refusal to close the purchase of the property constituted an unexcused failure to perform the agreement, i.e., a default. Thus, Crown was in default under Section 19. Sheridan was entitled to recover the earnest money as reasonable liquidated damages under the agreement.

The evidence in this case is undisputed, and as a matter of law, Sheridan is entitled to the grant of summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Thus, the trial court erred in denying summary judgment.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 22, 2001 —

*Van C. Wilks*, for appellant.

*Rowe, Foltz & Martin, Mitchell S. Rosen, Shawn D. Stafford, Griffin E. Howell III*, for appellee.