A02A1282. EMANUEL TRACTOR SALES, INC. v. DEPARTMENT OF TRANSPORTATION.
(571 SE2d 150)

ELDRIDGE, Judge.

This is an appeal from the grant of summary judgment in an action for inverse condemnation against Emanuel Tractor Sales, Inc., plaintiff, holding that it had no legal interest by lease in the land conveyed to the Department of Transportation, because under the express terms of the lease, the leasehold interest terminated auto-

---

matically upon the conveyance of part of the leasehold interest to the DOT. We determine, that at the moment of conveyance to DOT, the lease automatically terminated under the condition subsequent. We affirm.

John R. Roberts owned the land and operated a tractor dealership on this site since 1950. In 1982, Roberts sold the tractor dealership on the site to John Rountree, retaining the ownership of the land. In 1982, as owner and sole stockholder, Rountree incorporated Emanuel Tractor to operate the dealership. In 1982, Roberts rented the land to Emanuel Tractor. The allegedly executed written lease was retained by Roberts' former partner, which writing was purportedly lost at his death; no explanation was given why there were no copies of this agreement, and no documentary evidence was introduced which established the terms of the alleged lease. Emanuel Tractor had a below market rent of $1,000 per month, and Roberts had to pay the insurance on the building and taxes.

On March 2, 1998, Rountree and Roberts entered into a written lease to memorialize the 1982 written lease alleged to have been lost. Rountree signed the lease as "President." The initial term was for five years, effective September 1, 1987, and had two automatic renewal periods for five years each until August 3, 2002. It further provided that

> [i]n the event any part of the leased premises is taken through condemnation, or should the Lessor voluntarily sell any part of the leased premises to any City, County, State or Federal Agency for right of way purposes and should said condemnation or conveyance either [sic] restrict the ability of Lessee to maintain its business on the premises, this lease shall automatically terminate. Additionally, Lessee shall have the sole and exclusive right and remedy to terminate this lease at any time upon thirty days notice to Lessor of his desire to terminate said lease, in the event any actual or proposed condemnation proceeding shall, in the Lessees [sic] opinion, create such an inconvenience, hindrance or total inability to transact business on the leased premises, the Lessee deems it necessary to vacate said premises.

On March 12, 1998, the memorial of the earlier lease was recorded in the Office of the Clerk, Emanuel County Superior Court.

On March 27, 1998, Roberts sold a portion of the leased property as right-of-way to DOT. Roberts gave DOT a property owner's affidavit that there existed no leases, either recorded or unrecorded, on the land. However, Roberts had previously orally informed DOT of the Emanuel Tractor lease.

On June 5, 1998, Roberts and Emanuel Tractor, through Roun-

tree, executed and filed an amendment to the March 2, 1998 lease to correct a number of errors that occurred in the memorialization lease but not in the "1987 lease." The amendment stated that the intended renewal term in the 1987 lease was for 25 years through 2012 instead of 15 years through 2002, and the paragraph concerning condemnation was corrected to emphasize that the lessee had discretion regarding termination of the lease. The amendment substituted parties to the lease so that now the lease was between Emanuel Tractor and Roberts and not between Rountree and Roberts, because Emanuel Tractor had paid the lease since 1982. Thus, if the amendment of the March 2, 1998 lease had any legal effect, then it acted as a mutually agreed upon assignment by Rountree to Emanuel Tractor; all legal or equitable interest that Rountree had under the lease was assigned to Emanuel Tractor by Roberts' consent. Therefore, Rountree and Emanuel Tractor were in privity as to both the March 2, 1998 lease and the amendment.

1. The plaintiff contends that the trial court erred in finding that neither Rountree nor Emanuel Tractor had a compensable interest in the property. We do not agree, because the contract automatically terminated upon sale as a condition subsequent.

To determine if Emanuel Tractor or Rountree before it had any interest in the land after the sale, the March 2, 1998 lease must be construed by the trial court. Although the March 2, 1998 lease stated that it memorialized an earlier unestablished lease, it was an independent written contract from any alleged earlier agreement. The trial court's first task was to determine if the 1998 lease memorialized an earlier lease as secondary evidence.

(a) The March 2, 1998 lease failed to prove the terms of the alleged earlier lease and constituted secondary evidence of what the earlier lease terms provided. "In order to admit secondary evidence, it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing shall be made to the court, who shall hear the party himself on the question of diligence and the inaccessibility of the primary evidence." OCGA § 24-5-2.

> The best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for. Written evidence of a writing is considered of higher proof than oral evidence. In all cases where the parties have reduced their contract, agreement, or stipulation to writing and have assented thereto, such writing is the best evidence of the same.

OCGA § 24-5-4 (a), (b). Thus, the plaintiff had the burden of persuasion that there had previously existed a 1982 written lease and that

such written lease had been lost without any copies remaining. The plaintiff failed to satisfy the trial court that there had existed an earlier written lease. The role of the trial court is not to pass on the worthiness or credibility of secondary evidence but is to determine whether the secondary evidence is the best form of evidence accessible to the trial court. *Mulkey v. State*, 155 Ga. App. 304, 307 (270 SE2d 816) (1980). "The question of inaccessibility of primary evidence and diligence of the party is a determination within the discretion of the trial judge [(OCGA § 24-5-2)] and his decision will not be overturned unless that discretion is abused. *Brooks v. State*, 63 Ga. App. 575, 576[, hn. 2] (11 SE2d 688) [(1940)]." Id. at 306.[1]

(b) The March 2, 1998 lease constituted a valid binding written contract on its own between Roberts and Rountree, and the June 5, 1998 amendment had the effect of an assignment with Roberts' consent to Emanuel Tractor; it was for the trial court to construe the legal meaning of this lease to determine if the lease gave Rountree and his successor lessee any interest in the property after the conveyance of the right-of-way.

If the lease appeared ambiguous, then the trial court had to determine whether such ambiguity remained after application of the rules of construction. If an ambiguity remained after the trial court applied the rules of construction, then it was for a jury to resolve. The trial court had to determine if there was a condition subsequent that terminated the contract.[2] On the face of the lease, there existed an

---

[1] The party offering secondary evidence must first prove the existence of the primary evidence before the secondary evidence may be considered for admission. *Toco Hills, Inc. v. Rollins Protective Svcs. Co.*, 179 Ga. App. 823, 826 (1) (348 SE2d 65) (1986); *Growth Properties of Fla. v. Wallace*, 168 Ga. App. 893, 898-899 (3) (310 SE2d 715) (1983); *Silvey v. Wynn*, 102 Ga. App. 283 (115 SE2d 774) (1960). The 1998 lease failed to prove the terms of either a 1982 lease or a 1987 renewal lease; in fact, the amendment to the 1998 lease materially conflicted with the 1998 lease. Thus, the trial court in the exercise of discretion did not err in rejecting both the 1998 lease and amendment as secondary evidence of an earlier lease.

[2] Ambiguity exists when a contract is uncertain in its meaning, duplicitous, and indistinct; or when a word or phrase may be reasonably understood in more than one way. *Verret v. ABB Power T & D Co.*, 237 Ga. App. 492, 493 (1) (515 SE2d 435) (1999); accord *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 315 (554 SE2d 296) (2001). To determine if there is an ambiguity, the trial court must look to the four corners of the agreement to determine the meaning employed. *McCollum v. O'Dell*, 241 Ga. App. 6, 9 (2) (525 SE2d 721) (1999); *Sheridan v. Crown Capital Corp.*, supra at 315. After identifying an apparent ambiguity, the trial court must seek to resolve the ambiguity through application of the rules of contract construction. *McCollum v. O'Dell*, supra at 9; *Sheridan v. Crown Capital Corp.*, supra at 315.

As a matter of law, the trial court must ascertain the intent of the parties from the agreement through the rules of construction. OCGA §§ 13-2-1; 13-2-2; 13-2-3; *Early v. Kent*, 215 Ga. 49, 50 (1) (108 SE2d 708) (1959); *Farm Supply Co. &c. v. Cook*, 116 Ga. App. 814, 816 (1) (159 SE2d 128) (1967). As a matter of law, the trial court had to engage in a three-step analysis: (1) the court must decide if the contract language is unambiguous, and if so, the court enforces the contract's terms; (2) if the contract appears to be ambiguous, then the court must apply the rules of contract construction to resolve the ambiguity; and (3) if the ambiguity remains after use of the construction rules, then the meaning of the contract

ambiguity as to whether the condemnation or conveyance caused the lease to automatically terminate or whether a second condition must also be met, i.e., "and should said condemnation or conveyance either restrict the ability of the Lessee to maintain its business on the premises."

The provision in the lease for automatic termination upon certain things occurring was a condition subsequent agreed to by the parties that would cause the lease to terminate with no further duties or obligations on any party. "No precise technical words are required to create a condition subsequent." *Munford, Inc. v. C & S Nat. Bank*, 151 Ga. App. 112, 113-114 (258 SE2d 766) (1979) (sale of alcohol on leased premises violated a condition subsequent of the lease authorizing the lessor to terminate the lease); see also *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 318 (2) (554 SE2d 296) (2001) (condition subsequent to sales contract for satisfactory physical development for commercial shopping center); *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (1) (388 SE2d 916) (1989) (explained condition subsequent which was not in lease). "The law favors conditions to be subsequent rather than precedent and to be remediable by damages rather than by forfeiture." OCGA § 44-6-41; *Sheridan v. Crown Capital Corp.*, supra at 318; *King Indus. Realty v. Rich*, 224 Ga. App. 629, 631 (3) (481 SE2d 861) (1997); *McDuffie v. Criterion Cas. Co.*, 214 Ga. App. 818, 821 (449 SE2d 133) (1994). "A condition subsequent to an enforceable contract is a term of the contract within the intent of the parties that the happening or nonoccurrence of an event after the contract becomes binding upon the parties, which, by pre-agreement of the parties, causes the contract to terminate without further duties and obligations on any party." *Sheridan v. Crown Capital Corp.*, supra at 318; see also *Dept. of Human Resources v. Citibank F.S.B.*, 243 Ga. App. 433, 436-437 (534 SE2d 422) (2000); *Charter Investment &c. Co. v. Urban Med. Svcs.*, 136 Ga. App. 297, 299 (5) (220 SE2d 784) (1975).

Determination of the intent of the parties is the cardinal rule of contract construction. *Mut. Life Ins. Co. v. Davis*, 79 Ga. App. 336, 339 (1) (53 SE2d 571) (1949). In this case the parties were aware that DOT intended to either buy or take a right-of-way across the front of the property when they entered into the lease. The construction of the contract should "give a reasonable, lawful and effective meaning to all manifestations of [the] intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Whitmire v.*

must be decided by a jury. *Caswell v. Anderson*, 241 Ga. App. 703, 705 (527 SE2d 582) (2000).

*Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981); see also OCGA § 13-2-2 (4); *Bryan v. Brown Childs Realty Co.*, 252 Ga. App. 502, 509 (556 SE2d 554) (2001); *Sheridan v. Crown Capital Corp.*, supra at 316; *Rice v. Huff*, 221 Ga. App. 592, 593 (1) (472 SE2d 140) (1996). "When it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties." *Good Roads Machinery Co. v. Neal & Son*, 21 Ga. App. 160, hn. 3 (93 SE 1018) (1917). The contract must be construed as a whole rather than in separate and distinct parts, giving effect to all terms. *Sage Technology v. NationsBank N.A. South*, 235 Ga. App. 405, 407 (1) (509 SE2d 694) (1998). Generally, except where the terms are clear and unambiguous, the law will not construe the contract so that one party has the right to destroy the contract simply in their discretion. *Finlay v. Ludden & Bates Southern Music House*, 105 Ga. 264, 267 (31 SE 180) (1898); *Sheridan v. Crown Capital Corp.*, supra at 316. Plaintiff wants this court to find that both sentences of the condition subsequent gave the lessee absolute discretion to terminate the lease.

To construe "should said condemnation or conveyance either restrict the ability of the Lessee to maintain its business on the premises" as granting the lessee discretion over termination means that the automatic termination provision does not act, in fact, as a condition subsequent as it clearly states. Such construction also causes this ambiguous discretionary language to contradict the following sentence which clearly and unambiguously grants a discretionary right to elect either to terminate or to remain prior to the condition subsequent occurring of sale or condemnation. Further, the condition subsequent providing for automatic termination in the first sentence conflicts with the discretionary right in the second sentence to continue or to terminate by the lessee, i.e.,

> [a]dditionally, Lessee shall have the sole and exclusive right and remedy to terminate this lease at any time upon thirty days notice to Lessor of his desire to terminate said lease, in the event any actual or proposed condemnation proceedings shall, in the Lessees [sic] opinion, create such inconvenience, hindrance or total inability to transact business on the leased premises, the Lessee deems it necessary to vacate said premises.

The discretionary right of election in the lessee to terminate or to stay arose prior to any condemnation or sale under threat of condemnation, because in the second sentence, it arose "in the event any actual or proposed condemnation proceedings"; this election could be exercised on any mere threat of condemnation prior to any taking

upon 30 days notice. The order of the sentences should be reversed to give each effect.

The clear discretionary right to elect in the second sentence must be read to precede the condition subsequent's automatic termination upon condemnation or sale in the first sentence. The second sentence gave an absolute discretion to the lessee to elect to stay or to terminate. The first sentence cannot be read to contain a qualified discretion as appellant argues, because the language "and should said condemnation or conveyance either restrict the ability of Lessee to maintain its business on the premises" was an absolute discretionary right; such construction would make the first sentence qualifiedly discretionary and the second sentence absolutely discretionary, which would be redundant. Thus, for the automatic termination in the first sentence to have meaning, it applied if the lessee failed or refused to make a prior election, as in this case, because there was not 30 days between the execution and the sale; therefore, the condition subsequent occurred prior to any election. Thus, plaintiff had to make an election to stay or to terminate the lease prior to the condition subsequent occurring, i.e., condemnation or sale. This discretionary right gave the plaintiff more time to determine a course of action when condemnation or sale was threatened. However, the failure to either elect to stay or to terminate prior to sale or condemnation resulted in the automatic termination of the lease upon sale or condemnation, because the contract treated a nonelection as "restrict[ing] the ability of Lessee to maintain its business on the premises." Thus, the sentences are reversed in order and effect; all provisions of the contract are given a reasonable and rational effect, with the second sentence having effect first and the first sentence providing a condition subsequent where no election has been made.

Therefore, the condition subsequent terminated the lease when it occurred after the plaintiff failed to make an election whether to terminate or to stay. Termination or abrogation of a contract by a condition subsequent has the effect of a mutual rescission, because it is a term agreed to by the parties to bring the contract to an end upon the occurrence of the condition. The parties were returned to their status quo ante or as nearly as possible. *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*, 245 Ga. App. 460, 463 (1) (537 SE2d 677) (2000) (partial rescission of a contract denied); *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 417 (4) (532 SE2d 122) (2000) (rescission of a contract is a complete abrogation of the contract). Thus, the effect of termination is a complete abrogation of the contract. *Southern Prestige Homes v. Moscoso*, supra at 412.

(c) Since the March 2, 1998 lease terminated automatically on March 27, 1998, with the occurrence of the condition subsequent, i.e., sale, the June 5, 1998 amendment had no legal effect on the termi-

nated lease. See generally *Southern Prestige Homes v. Moscoso*, supra at 412 (mutual rescission of a contract is a complete abrogation of the contract).

Since the parties intended to obligate themselves by mutual agreement when they executed the amendment, the amendment became a new lease between Emanuel Tractor and Roberts by incorporating the March 2, 1998 lease by reference, which substituted a new party and had a different property subject to the lease. *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995). The written executed amendment became the new lease. OCGA § 13-4-4; *Cloud v. Ga. Central Credit Union*, 214 Ga. App. 594, 596 (1) (448 SE2d 913) (1994).

If a contract is terminated, then any subsequent amendment does not have retroactive application to breathe life into a dead instrument, because the earlier contract has been abrogated. *Southern Prestige Homes v. Moscoso*, supra at 412. Legally, the contract ceased to exist. Id. New parties by the amendment entered into a new agreement, which binds them as different parties; there could be no merger of the different leases, i.e., March 2, 1998, and June 5, 1998. *Object Technologies v. Marlabs, Inc.*, 246 Ga. App. 202, 203 (2) (540 SE2d 216) (2000); see also *Holmes v. Worthey*, 159 Ga. App. 262, 266-267 (282 SE2d 919) (1981), aff'd, *Worthey v. Holmes*, 249 Ga. 104 (287 SE2d 9) (1982). However, if the subject of the lease has changed, i.e., the property is less, then the new agreement applies only to the land then owned by the lessor and cannot burden any purchaser of the out-take with the prior lease.

Further, a contract cannot be subsequently modified where it materially affects the interests of a third party acquired prior to such amendment. *McMurray v. Bateman*, 221 Ga. 240, 253 (144 SE2d 345) (1965) (a contract can be altered by subsequent agreement except where the interest of a third party is involved); *Webb v. Whitley*, 114 Ga. App. 153, 158 (4) (150 SE2d 261) (1966). The subject of the March 2, 1998 lease changed prior to the amendment with Roberts' sale of part of the land to DOT.

2. Division 1 controls and makes moot enumerations of error 2 through 9.

*Judgment affirmed. Barnes, J., concurs. Smith, P. J., concurs specially. Ellington, J., disqualified.*

SMITH, Presiding Judge, concurring specially.

While I agree with the conclusion of the majority that the decision of the trial court should be affirmed, I do not agree with the basis for affirmance stated in the majority nor all that is said in that opinion. I therefore concur specially.

When Emanuel Tractor Sales, Inc. (ETS) filed its complaint in

January 2000 against the DOT for inverse condemnation, ETS sought damages from the DOT for the forced relocation of its business, for the increased rent and business losses attributable to the forced relocation, and compensation "for the taking and damaging of Plaintiff's leasehold interest in the property, including relocation expenses." However, it is undisputed that the DOT did not begin construction on the highway project until August 1999. It is also undisputed that ETS had relocated its business in January 1998, moving from 105 East Street to property owned by Rountree on Electric Road. By August 1999, ETS had ceased paying rent to Roberts, and, in fact, had not made any rent payments to Roberts after June 1998. Thus, before August 1999, the only action taken by the DOT that theoretically could have impacted ETS's alleged leasehold interest, even indirectly, was the DOT's purchase of the 0.188 acres from Roberts on March 27, 1998. From the date of that purchase in March 1998 until August 1999, the DOT did not undertake any construction work on its project.

As a general rule, a leaseholder is entitled to receive compensation when his interest is taken or damaged for a public purpose. *Bill Ledford Motors v. Dept. of Transp.*, 225 Ga. App. 548, 549 (484 SE2d 510) (1997). But the losses suffered by a business owner who abandons his leasehold interest in property based on anticipated condemnation are not compensable because such losses do not result from an exercise of eminent domain. *Josh Cabaret, Inc. v. Dept. of Transp.*, 256 Ga. 749, 750 (3), (5) (353 SE2d 346) (1987). See *Collins v. MARTA*, 163 Ga. App. 168, 170 (6) (291 SE2d 742) (1982) (full concurrence in Division 6) (property owner who was not able to rent houses on his property due to anticipated condemnation did not sustain a compensable loss). Simply stated, the rule is this: "Alleged losses or diminution in the fair market value of property attributable to an *anticipated* condemnation are not compensable elements of damage or a taking resulting from the exercise of eminent domain authority." (Citations omitted.) *Thompson v. Dept. of Transp.*, 209 Ga. App. 353, 354 (1) (433 SE2d 623) (1993).

Even assuming solely for the sake of analysis that ETS had a leasehold interest in the remaining property to which Roberts held title — either as a tenant at will or under rights acquired under the amended lease — ETS cannot prevail on its claim for damages. See *Josh Cabaret*, supra, 256 Ga. at 750 (5). None of the losses allegedly suffered by ETS were the result of the DOT's exercise of eminent domain authority but were losses incurred in anticipation of the exercise of that power. See *Five Forks, LLC v. Dept. of Transp.*, 250 Ga. App. 157, 160 (550 SE2d 715) (2001). Therefore, as a matter of law, the damages sought by ETS are not compensable. See *MARTA v. Fountain*, 256 Ga. 732, 734 (352 SE2d 781) (1987). Because a sum-

mary judgment right for any reason will be affirmed, *Costrini v. Hansen Architects*, 247 Ga. App. 136, 138 (1) (543 SE2d 760) (2000), I concur specially only in affirming the judgment.

DECIDED AUGUST 2, 2002 —
RECONSIDERATION DENIED SEPTEMBER 13, 2002 — 

*Ruffin & Dell, Charles L. Ruffin*, for appellant.
*Thurbert E. Baker, Attorney General, R. O. Lerer, Senior Assistant Attorney General, Smith & Jenkins, Wilson R. Smith, Dwyer, White & Sapp, Anne W. Sapp*, for appellee.