**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 27, 2014**

# In the Court of Appeals of Georgia

A14A0679. DRURY v. SECURITY STATE BANK.

A14A0680. DRURY v. SECURITY STATE BANK.

BOGGS, Judge.

In these consolidated appeals,[1] Kathy and Carl Drury appeal pro se from two trial court orders in this dispossessory action that was filed in Fulton County State Court ("the state court"). They contend that the state court erred by (1) concluding that they were tenants at sufferance rather than tenants at will following Security State Bank's ("the Bank") foreclosure; (2) dismissing their appeal "on the grounds that issues of title had been decided;" and (3) ruling upon issues involving title to land over which the state court lacked jurisdiction.

---

[1] Case No. A14A0679 relates to Kathy Drury's appeal, and Case No. A14A0680 relates to Carl Drury's appeal.

In dispossessory actions, "[w]e apply a de novo standard of review to legal issues decided by the trial court, and factual findings made by the trial court shall not be set aside unless clearly erroneous." (Citation and footnote omitted.) *Owens v. Bank of America, N.A.*, 304 Ga. App. 323 (696 SE2d 379) (2010). The record shows that on November 2, 2010, the Bank foreclosed upon Fulton County property owned by the Drurys that had been used to secure a $1.5 million loan. On July 19, 2011, the Bank filed a petition for a writ of dispossession in Fulton County State Court alleging that the Drurys were tenants at sufferance. In their answer and counterclaim, filed on August 1, 2011, the Drurys contended that the Bank entered into a lease agreement with them that created a tenancy at will and asserted promissory estoppel as a bar to summary eviction. They also asserted a claim for wrongful eviction "[s]ubject to and without waiving any claim that the underlying foreclosure is invalid and should be set aside."

On August 19, 2011, after the Bank sought a writ of possession, the Drurys filed an action in Telfair Superior Court seeking to set aside the foreclosure of their Fulton County property and an injunction to preclude their eviction. The Bank filed a counterclaim in the Telfair County action seeking a declaration that its foreclosure was lawful. On September 23, 2011, the Drurys filed another action against the Bank

in Fulton County Superior Court, seeking the same relief that they had requested in the Telfair County action. On September 26, 2011, the Drurys dismissed their Telfair County complaint, and the Bank objected to the dismissal under OCGA § 9-11-41 (a) (2), based upon its pending counterclaim.

On August 25, 2011 and September 29, 2011, the trial court in the Fulton State dispossessory action held evidentiary hearings on the issue of whether the Drurys were tenants at will or tenants at sufferance. On January 12, 2012, the state court entered an order concluding that "no month to month tenancies existed or exist as was alleged and testified to by the Defendants, and that the Defendants are tenants at sufferance, following the foreclosure." Based upon the actions pertaining to the validity of the foreclosure in the Fulton and Telfair Superior Courts, the state court stated in its order that it would consider a stay of the writ of possession. On January 18, 2012, the day before the writ of possession became effective, the Drurys filed a notice of appeal from the state court's order.

On March 14, 2012, *before* the December 9, 2013 docketing of this appeal of from the state court's order, the Drurys' Fulton Superior Court action was dismissed for a variety of reasons. This court affirmed the dismissal in an unpublished opinion on April 19, 2013. On May 18, 2012, the Telfair County court entered an order

3

declaring the Bank's foreclosure valid. In April 2013, the Drurys' attempt to file an out-of-time appeal from the Telfair County order failed, because out-of-time appeals are not permitted in civil cases.

In May of 2013, after this court resolved the pending appeals from the Fulton and Telfair Superior Court orders, the Bank moved to dismiss the Drurys' appeal in the present action on the ground of mootness and sought an immediate writ of possession. On July 25, 2013, the state court entered an order dismissing the Drurys' appeal as moot and issued another writ of possession with an immediate effective date. On July 30, 2013, the Drurys filed a notice of appeal from this order.

1. The Drurys contend that the state court erred by dismissing their first appeal in its July 2013 order, and we agree. While a trial court has authority to dismiss an appeal as moot, *Atwell v. Lane Co.*, 182 Ga. App. 813, 814 (1) (357 SE2d 142) (1987),[2] the Drurys' appeal from the state court's January 12, 2012 order was not rendered moot by the finality of the Telfair Superior Court order declaring the foreclosure legal and valid. The issue decided by the state court in its 2012 order was

---

[2] But see *American Medical Security Group v. Parker*, 284 Ga. 102, 108-110 (663 SE2d 697) (2008) (Justice Benham, concurring specially, questions wisdom of allowing trial courts to dismiss appeals on same grounds for which appellate court can dismiss an appeal).

4

whether the Drurys were tenants at will or tenants at sufferance following the Bank's foreclosure. The legality and finality of the foreclosure did not render moot the Drurys' appeal of an order determining their status and legal rights following the foreclosure. We therefore reverse the state court's July 25, 2013 order dismissing the Drurys' appeal.

2. In their remaining enumeration of error, the Drurys' assert that the state court erred by concluding in its January 12, 2012 order that they were tenants at sufferance, as opposed to tenant at will, following the foreclosure. We disagree.

Tenants at will are entitled to 60 days' notice of termination under OCGA § 44-7-7, and a demand for possession following the expiration of this time period is a condition precedent to the institution of dispossessory proceedings under OCGA § 44-7-50 (a). *Trumpet v. Brown*, 215 Ga. App. 299, 300 (2) (450 SE2d 316) (1994).

> A tenancy at sufferance differs from a tenancy at will in this: The tenant at sufferance entered lawfully and holds over wrongfully without the landlord's assent or dissent; while the tenant at will holds by the landlord's permission. A tenant at will is always in by right, evidenced by permission, express or implied, of the landlord. A tenant at sufferance holds over by wrong, and he is in possession, not by permission of the landlord, but as a result of his laches or neglect. It takes very little to convert a tenancy at sufferance into a tenancy at will. Receipt of rent, demand for rent, or anything that indicates the permission of the

landlord for the tenant to remain in possession will have this effect. Mere silence, neglect, or laches on the part of the landlord will not have this effect. . . . At common law a tenant at sufferance was not entitled to any notice to quit, before his tenancy could be terminated. There is nothing in our code which alters the common-law rule on this subject; the statute providing for notice to quit being confined to tenancies at will. [OCGA § 44-7-7].

(Citations omitted.) *Willis v. Harrell*, 118 Ga. 906, 909-910 (45 SE 794) (1903). See also *Diner One v. Bank South*, 219 Ga. App. 702, 704 (466 SE2d 234) (1995) (tenancy at will created by demand for rent). "The payment of rent is not essential to the creation of a tenancy at will. [Cits.]"*Carruth v. Carruth*, 77 Ga. App. 131, 135 (1) (48 SE2d 387) (1948). But a tenancy at sufferance continues "until there has been some affirmative action by the landlord which has the effect of converting the tenancy into some other form. [Cit.]" *Crawford v. Jones*, 27 Ga. App. 448 (108 SE 807) (1921).

The record shows that the state court conducted two evidentiary hearings on August 25, 2011 and September 29, 2011 before concluding that the Drurys were tenants at sufferance. "As a general rule in bench trials, the judge sits as trier of fact and the court's findings are analogous to a jury's verdict and should not be disturbed

6

if there is any evidence to support them." (Citations and punctuation omitted.) *Rafizadeh v. KR Snellville, LLC*, 280 Ga. App. 613 (634 SE2d 406) (2006).

In this case, the record shows that on November 5, 2010, following the foreclosure, the Bank's attorney notified the Drurys that they had 30 days to vacate the premises and that they would be considered trespassers after that date. On December 3, 2010, the Bank's attorney sent another letter to the Drurys, stating:

> You have flooded my office e-mail and the e-mail of Security State Bank with various letters and other documents which were unsolicited. Contracts and agreements cannot be created unilaterally.
>
> You have tried to create agreements regarding your former residence which do not exist. The only agreement between you and Security State Bank was the gratuitous allowance, that, after the foreclosure, you could have until December 5, 2010 to vacate the residence with all your possessions.
>
> On behalf of Security State Bank, please note the following position:
>
> (1) The residence is **now owned by Security State Bank;**
>
> (2) There are **no agreements** to allow you and your family to remain in the residence past December 5, 2010;

(3) There is **no agreement** for you or your wife to act as a sales representative for Security State Bank;

(4) Contrary to your assertions, the Bank prefers the house to be empty and vacant to facilitate the sale of the home;

(5) The Security State Bank **denies** the validity or existence of any contract or agreement not executed by the Bank, in accordance with proper corporate execution following board approval.

You are now a tenant at sufferance with no rights to the house or property. **If you have not vacated the premises by December 5, 2010, action will be taken to evict you from the residence.**

Please use your remaining time to secure removal and storage of your possessions as instructed by the letter of November 5, 2010. Neither State Security Bank nor this office will respond to your emails or phone calls from this point forward. The position of the Security State Bank is clear.

(Emphasis in original.) On December 9, 2010, the Bank sent another letter to the Drurys offering to allow them to remain in the property until January 15, 2011, provided they agreed to certain conditions in writing. The Drurys did not agree to the conditions based upon their belief that they already had an oral agreement with the

8

bank to remain in the home until it was sold. On March 25, 2011, the Bank's attorney sent a letter demanding immediate possession of the property that also stated:

> Let us re-emphasize and reiterate that there is no agreement between Security State Bank and (1) any members of the Carl M. Drury, III family or household; (2) any members of the Kathy Drury family or household; (3) or with any tenants, for them to remain on the premises for any reason, for any time, for any purpose.

> Please vacate immediately so as to avoid additional litigation.

The Drurys asserted in the hearing that the Bank entered into an oral agreement with them in November 2010 that allowed them to stay in the home until it was sold in exchange for their assistance in staging the home with their furniture, leaving the home at a moment's notice for realtor showings, and maintaining the utilities and grounds. Carl Drury acknowledged in his testimony that they would have paid for utilities and maintained the home if they still owned it. The Bank paid for taxes and insurance on the property.

The Bank president who participated in the telephone call in which the alleged oral agreement was made denied the existence of any oral agreement with the Drurys to remain in the home until it sold. The Bank's vice president testified that it listed and showed the house after the foreclosure with the Drurys' furniture in place "[o]nly

9

because they won't move out." According to the vice president, the Drurys' continued presence in the home inhibited the bank's ability to sell the home.

At the conclusion of the September 2011 hearing, the state court orally ruled that no tenancy at will had been created, stating,

> This is, in my opinion, the way post-foreclosure evictions are supposed to go, not the way they're not supposed to go. It is commendable that the bank extended courtesies. I agree with [the Drurys' counsel] that at some point there's a line where those courtesies turn into contractual obligations. I don't find . . . from the facts in this case that that line has been crossed.

Based upon the "any evidence" standard of review, we affirm the state court's decision to grant a writ of possession based upon its conclusion that the Drurys were tenants at sufferance. It is well-established that "[w]here former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance. [Cits.]" *Bellamy v. Fed. Deposit Ins. Corp.*, 236 Ga. App. 747, 750 (1) (512 SE2d 671) (1999). Based upon the conflicting evidence about the existence of an oral agreement and the debatable benefit to the Bank of the Drurys' continued occupancy of the home, the state court was authorized to find that the Bank did not enter into an open-ended agreement to allow the Drurys to remain in the property

10

until it was sold in exchange for their staging and maintenance of the home. And the agreement to allow the Drurys to remain in the home through December 5, 2010 created, at most, an oral lease for a definite term. Compare OCGA § 44-7-6 ("Where no time is specified for the termination of a tenancy, the law construes it to be a tenancy at will.") At the expiration of this definite term, the Drurys once again became tenants at sufferance and therefore were *not* entitled to 60 days' notice of the termination of their tenancy. See *Booker v. Trizec Properties*, 184 Ga. App. 782, 783 (2) (363 SE2d 13) (1987); *Knighton v. Gary*, 163 Ga. App. 394, 397 (295 SE2d 138) (1982). We find this case analogous to *Hill v. Kitchens*, 39 Ga. App. 789, 790 (7) (148 SE 754) (1922), in which we held that a tenancy at will was not created by evidence showing that the landlord did nothing "more than merely tolerate the defendant's possession for the time being." Id.

*Judgments affirmed in part, reversed in part. Barnes, P. J., and Branch, J., concur.*