**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 18, 2020**

# In the Court of Appeals of Georgia

A20A1269, A20A1420. OUTFRONT MEDIA, LLC v. CITY OF
    SANDY SPRINGS.

BARNES, Presiding Judge.

These companions appeals arise out of a dispute between the City of Sandy Springs and Outfront Media, LLC regarding whether the City was entitled to dispossess Outfront from property upon which Outfront leased space for operating certain billboards, whether Outfront was entitled to compensation from the City for its interests in the property, and whether Outfront should be reimbursed for its fees and expenses incurred in condemnation proceedings that the City dismissed. In two related orders, the trial court granted the City's motion for summary judgment on its dispossessory claim and denied Outfront's cross-motion for summary judgment on that claim, granted the City's motion for summary judgment on Outfront's

counterclaim for just and adequate compensation, and denied Outfront's motion for payment of fees and expenses under OCGA § 22-1-12. Outfront now appeals these rulings by the trial court. For the reasons discussed more fully below, we affirm the trial court's grant of summary judgment to the City on its dispossessory claim and the denial of summary judgment to Outfront on that claim, reverse the trial court's grant of summary judgment to the City on Outfront's counterclaim for just and adequate compensation, and reverse the trial court's denial of Outfront's motion for payment of fees and expenses.

> A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant [or denial] of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

(Citations and punctuation omitted.) *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013).

So viewed, the record reflects that WB Holdings-Triangle, LLC owned the property located at 6215 Roswell Road in Sandy Springs, Georgia (the "Property"). Through a lease agreement with WB, Outfront was permitted to own and operate certain billboards on the Property in return for annual rent. The lease agreement described the leased premises as including the area of the Property accommodating the base and footings for the billboards and the air space above.

Effective November 1, 2014, WB and Outfront entered into an addendum to the lease agreement that extended the term of the lease through October 2024 and modified other terms (the "Amended Lease"). At issue in this litigation is Paragraph 15 of the Amended Lease, which stated:

> In the event all of the premises, or such part of the premises as to prevent the continued maintenance of the Sign on the Premises, shall be taken for any public or quasi-public purpose under any statute or by right of eminent domain or private purchase in lieu thereof by a public or quasi-public body vested with the power of eminent domain, then, when possession of the Premises (or such part thereof) shall have been taken thereunder, as between Lessor and Lessee this lease shall terminate and all rights of the Lessee hereunder to possession of the Premises shall immediately cease and terminate. In such event, the accrued Rent shall be paid up to the time of such termination (with a refund of pre-paid Rent being made from Lessor to Lessee if appropriate) and the Lessee shall have no claim against the Lessor for

3

the value of the unexpired term hereof and the Lessee shall not be entitled to receive any part of the condemnation award or purchase price associated with the value of the real property itself, provided, however, that Lessee retains and shall be entitled to receive compensation for its remaining interests in the Premises related to its trade fixtures, fixtures, personal property, intangibles and business from the condemning authority directly. Lessee hereby assigns to Lessor the right to receive compensation for any leasehold interest which tenant may have in the Premises so condemned, it being understood and agreed that any valuation of Lessee's interest in the Premises shall be based upon a fair market rent from Lessee to Lessor.

*The Condemnation Action.* In September 2016, the City filed a condemnation action in the Superior Court of Fulton County seeking to acquire land for the implementation of the City's capital improvement plan, including the Property (the "Condemnation Action"). The City's condemnation petition included WB and Outfront as condemnees.

In April 2017, the City reached a settlement with WB as to the amount it would pay for the Property, and WB executed a quitclaim deed to the City. The City dismissed WB from the Condemnation Action in May 2017.[1]

The City and Outfront entered into negotiations but were unable to reach a settlement regarding the removal of the billboards from the Property. After settlement negotiations were unsuccessful, the City commenced a dispossessory action against Outfront (as discussed infra), and, in June 2018, the City dismissed the remaining condemnees from the Condemnation Action, including Outfront. Outfront then filed a motion in the Condemnation Action seeking payment of its fees and expenses under OCGA § 22-1-12 on the ground that the City had abandoned the condemnation proceedings against it.

*The Dispossessory Action.* On April 12, 2018, the City's counsel sent a letter and email to Outfront's counsel reciting that Outfront had rejected the City's prior settlement offer, asserting that Outfront no longer had a leasehold interest in the Property and was a holdover tenant under Paragraph 15 of the Amended Lease, and proposing to forego any accrued rent if Outfront removed its billboards within 14

---

[1] The City reached settlements with several other condemnees named in the Condemnation Action and dismissed them from the case as well.

5

days (the "April 12 Letter"). The April 12 Letter further stated that if Outfront "cannot accept this proposal, please consider this notice of intent to file the dispossessory to oust the tenant holding over." Outfront refused to remove the billboards, and the City filed a dispossessory action against Outfront in the Magistrate Court of Fulton County on April 27, 2018 (the "Dispossessory Action"). The City alleged that Outfront was a tenant holding over with no remaining possessory interest in the Property as a result of the quitclaim deed conveying the Property to the City and Paragraph 15 of the Amended Lease, and it sought the removal of the billboards from the Property (the "Dispossessory Action"). Outfront answered and filed a counterclaim alleging that if the Amended Lease was terminated when the Property was sold to the City, Outfront was entitled to just and adequate "compensation for its remaining interests in the [Property] related to its trade fixtures, fixtures, personal property, intangibles and business" in an amount of not less than $600,000.

In August 2018, the magistrate court transferred the Dispossessory Action, including Outfront's counterclaim, to the Fulton County Superior Court, where the case was assigned to the same superior court judge as the Condemnation Action. After the transfer, the City filed a motion for summary judgment on both its dispossessory claim and Outfront's counterclaim for just and adequate compensation,

6

and Outfront filed a cross-motion for summary judgment on the City's dispossessory claim.

*The Superior Court's Two Orders.* Following a hearing on the aforementioned motions, the trial court entered an order in the Dispossessory Action granting the City's motion for summary judgment on its dispossessory claim and denying Outfront's cross-motion for summary judgment on that claim. That same day, the trial court entered a second order granting the City's motion for summary judgment on Outfront's counterclaim for just and adequate compensation in the Dispossessory Action and denying Outfront's motion for attorney fees and expenses in the Condemnation Action.

*Case No. A20A1420*

1. Outfront contends that the trial court erred in granting summary judgment to the City on the City's dispossessory claim and in denying summary judgment to Outfront on that claim. We disagree.

Under Georgia law, once a lease has been terminated and the tenant refuses to vacate, the tenant becomes a tenant holding over beyond the term of the lease, and the

landlord is entitled to institute a dispossessory proceeding. See OCGA § 44-7-50 (a);[2]

*C & A Land Co. v. Rudolf Investment Corp.*, 163 Ga. App. 832, 833 (296 SE2d 149)

(1982). A landlord initiates a dispossessory proceeding by filing a dispossessory

affidavit. OCGA §§ 44-7-50 (a); 44-7-51 (a).[3] As a condition precedent to initiating

a dispossessory proceeding, the landlord must make a demand for possession upon

the tenant. OCGA § 44-7-50 (a); *Sandifer v. Long Investors*, 211 Ga. App. 757, 758

(2) (c) (440 SE2d 479) (1994). Additionally, if the tenant is a tenant at will rather than

a tenant at sufferance, the landlord is required to give the tenant 60-days notice of

---

[2] OCGA § 44-7-50 (a) provides in part:
　　　In all cases when a tenant holds possession of lands or tenements over and beyond the term for which they were rented or leased to such tenant . . . , when the owner of such lands or tenements desires possession of such lands or tenements, such owner may, individually or by an agent, attorney in fact, or attorney at law, demand the possession of the property so rented, leased, held, or occupied. If the tenant refuses or fails to deliver possession when so demanded, the owner or the agent, attorney at law, or attorney in fact of such owner may immediately go before the judge of the superior court[ ] . . . or a magistrate in the district where the land lies and make an affidavit under oath to the facts. The affidavit may likewise be made before a notary public.

[3] OCGA § 44-7-51 (a) provides in part:
　　　When the affidavit provided for in Code Section 44-7-50 is made, the judge of the superior court . . . or deputy clerk of the magistrate court shall grant and issue a summons to the sheriff or his deputy or to any lawful constable of the county where the land is located. . . .

8

termination of the lease before making the demand for possession. OCGA § 44-7-7;[4]

*Trumpet v. Brown*, 215 Ga. App. 299, 300 (2) (450 SE2d 316) (1994).

Against this legal backdrop, we consider Outfront's arguments regarding the City's dispossessory claim. Outfront argues that the City's dispossessory claim failed as a matter of law because the City (a) did not correctly identify the Property in its dispossessory affidavit that it filed to initiate the Dispossessory Action; (b) did not provide Outfront with the 60-days notice of termination of the Amended Lease as required for a tenancy at will; and (c) did not make a proper demand for possession upon Outfront. We will address these arguments each in turn.

(a) *Dispossessory Affidavit.* Outfront contends that the dispossessory affidavit filed by the City to initiate the Dispossessory Action was fatally flawed because it listed the wrong address for the Property, and that the trial court erred in considering the City's amended dispossessory affidavit correcting the defect because it was filed less than 30 days before the summary judgment hearing.[5] We disagree.

---

[4] OCGA § 44-7-7 provides in part: "Sixty days' notice from the landlord . . . is necessary to terminate a tenancy at will."

[5] The City's amended dispossessory affidavit was filed on December 14, 2018. The hearing was held on December 19, 2018.

9

While the City's original dispossessory affidavit listed the wrong address for the Property,[6] a dispossessory affidavit may be amended to correct a deficiency in the description of the premises from which the landlord seeks to evict the tenant. *Perry v. Smith*, 91 Ga. App. 538, 539 (2) (86 SE2d 345) (1955). Furthermore, because the dispossessory affidavit initiates the dispossessory action,[7] the affidavit can be amended in the same manner as a complaint or other pleading. See *Joyce's Submarine Sandwiches v. California Public Employees' Retirement System*, 195 Ga. App. 748, 751 (3) (395 SE2d 257) (1990) (dispossessory affidavit could be amended the same as other pleadings); *Hyman v. Leathers*, 168 Ga. App. 112, 114 (3) (308 SE2d 388) (1983) (dispossessory affidavit "amendable to the same extent as ordinary pleadings"); *Officenters Intl. Corp. of Atlanta v. Interstate N. Assoc.*, 166 Ga. App. 93, 94 (303 SE2d 292) (1983) (allegation in dispossessory affidavit regarding past due rent was "nothing more than [the landlord's] cause of action for the writ, the gist of its complaint for eviction") (citation and punctuation omitted). See also OCGA § 9-10-130 ("All affidavits . . . that are the foundation of legal proceedings[ ] . . . shall

[6] Outfront does not contend that it was ever confused as to what property was the subject of the Dispossessory Action, particularly in light of the Condemnation Action and the April 12 Letter.

[7] See OCGA §§ 44-7-50 (a); 44-7-51 (a). See also supra notes 2-3.

10

be amendable to the same extent as ordinary pleadings and with only the restrictions, limitations, and consequences of ordinary pleadings."). And, "[a] party may amend his pleadings as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). Therefore, given the absence of the entry of a pretrial order, the City was entitled to amend its dispossessory affidavit to correct the property description when it did so in this case. See *Peterson v. P.C. Towers, L.P.*, 206 Ga. App. 591, 591 (1) (426 SE2d 243) (1992) (concluding that amendment to dispossessory action was timely because made prior to entry of pretrial order pursuant to OCGA § 9-11-15 (a)); *Benson v. Sullivan*, 162 Ga. App. 829, 830 (1) (293 SE2d 380) (1982) (applying predecessor statute to OCGA § 9-11-15 in context of dispossessory affidavit).

It is true, as Outfront argues, that affidavits relied on as evidence in support of a motion for summary judgment must be filed at least 30 days prior to the hearing on the motion. See OCGA §§ 9-11-6 (d) (stating that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion"); 9-11-56 (c) (providing that summary judgment "motion shall be served at least 30 days before the time fixed for the hearing"); *Cordell v. Bank of N. Ga.*, 295 Ga. App. 402, 405 (1) (b) (672 SE2d 429) (2008) (noting that "affidavits relied upon in support of a motion for summary

11

judgment must be on file for at least 30 days prior to the hearing") (citation and punctuation omitted).[8] But that rule is inapposite here because the dispossessory affidavit was not an evidentiary affidavit filed in support of summary judgment. Rather, as pointed out above, the dispossessory affidavit functioned as the complaint or pleading that was filed to commence the Dispossessory Action, and thus the deadline for amending complaints or pleadings as set out in OCGA § 9-11-15 (a) applied. Consequently, Outfront's reliance on the filing deadline applicable to affidavits submitted as evidence in support of a motion for summary judgment is misplaced under the circumstances here.

(b) *Notice of Termination.* Outfront also argues that the City's dispossessory claim failed as a matter of law because the City did not provide Outfront with 60-days notice of termination of the Amended Lease as required for a tenancy at will under OCGA § 44-7-7. See *Trumpet*, 215 Ga. App. at 300 (2) (writ of possession

---

[8] As explained in *Cordell*,

> OCGA § 9-11-56 (c), which requires that a motion for summary judgment be served at least 30 days before the time fixed for a hearing, and OCGA § 9-11-6 (d), which requires that when a motion is supported by affidavit, the affidavit shall be served with the motion, have been construed together to mean that an affidavit relied on in support of a motion for summary judgment must be on file for at least 30 days prior to the hearing.

(Citations, punctuation, and footnotes omitted.) *Cordell*, 295 Ga. App. at 405 (1) (b).

12

improperly issued to landlord, where case involved a tenancy at will and landlord failed to provide tenant 60-days notice of termination of the lease). We disagree because Outfront was a tenant at sufferance rather than a tenant at will.

> A tenancy at sufferance differs from a tenancy at will in this: The tenant at sufferance enters lawfully and holds over wrongfully without the landlord's assent or dissent; while the tenant at will holds by the landlord's permission. A tenant at will is always in by right, evidenced by permission, express or implied, of the landlord. A tenant at sufferance holds over by wrong, and he is in possession, not by permission of the landlord, but as a result of his laches or neglect.

(Citations and punctuation omitted.) *Drury v. Security State Bank*, 328 Ga. App. 39, 41 (2) (759 SE2d 635) (2014). The distinction between the two types of tenancies is important because a tenant at sufferance is not entitled to 60-days notice of termination from the landlord under OCGA § 44-7-7. See id. at 44-45 (2).

In the present case, under the plain language of Paragraph 15 of the Amended Lease, in the event of a private purchase of the Property by a public body vested with the power of eminent domain, the Amended Lease would terminate and "all rights of [Outfront] hereunder to possession of the [Property] shall immediately cease and terminate." Hence, when the City purchased the Property from WB, the Amended Lease immediately terminated, and Outfront's right of possession in the Property

13

ceased, such that it no longer had the right to occupy the area of the Property accommodating the base and footings for its billboards and the air space above. Moreover, it is undisputed that Outfront did not remove its billboards from the Property after the Amended Lease was terminated. Once a lease has been terminated and the tenant holds over, the tenant becomes a tenant at sufferance. *Solon Automated Svcs. v. Corp. of Mercer Univ.*, 221 Ga. App. 856, 860 (3) (c) (473 SE2d 544) (1996). Accordingly, Outfront became a tenant at sufferance by continuing to maintain its billboards on the Property without the City's consent after the City purchased the Property from WB and the Amended Lease was terminated. See id.

Outfront argues, however, that the tenancy at sufferance was converted into a tenancy at will based on the conduct of the City after it purchased the Property. "[A] tenancy at sufferance continues until there has been some affirmative action by the landlord which has the effect of converting the tenancy into some other form." (Citation and punctuation omitted.) *Drury*, 328 Ga. App. at 42 (2). A tenancy at sufferance is converted into a tenancy at will if the landlord gives the tenant permission, express or implied, to remain in possession of the property. *Solon Automated Svcs.*, 221 Ga. App. at 860 (3) (c). "[I]t takes little to convert a tenancy at sufferance into a tenancy at will. Anything that indicates the permission of the

14

landlord for the tenant to remain in possession will have this effect." (Citation and punctuation omitted.) Id. But "[m]ere silence, neglect, or laches on the part of the landlord will not have this effect." (Citation and punctuation omitted.) *Drury*, 328 Ga. App. at 42 (2).

(i) Outfront first asserts that the tenancy at sufferance was converted into a tenancy at will because the City accepted two rent checks from Outfront following the City's purchase of the Property and the termination of the Amended Lease. Under certain circumstances, acceptance of rent can indicate permission of the landlord to remain on the premises and can convert a tenancy at sufferance into a tenancy at will. See *Drury*, 328 Ga. App. at 42 (2). But the City contends that even assuming that it "accepted" two rent payments from Outfront,[9] its acceptance of the payments did not

---

[9] On April 17, 2018, Outfront delivered a check to the City that it contended covered rent for the period of November 1, 2017 through October 31, 2018. On September 20, 2018, Outfront delivered a second check to the City that it contended covered upcoming rent for the period of November 1, 2018 through October 31, 2019. The City deposited the two checks. The City thereafter sought to refund the latter payment to Outfront, but Outfront declined to deposit the refunded check. The City also argued that Outfront's counsel should not have mailed the two checks directly to the City's Finance Department without notifying the City's counsel. Pursuant to a subsequent order of the trial court, the funds ultimately were refunded to Outfront and deposited into the registry of the trial court, along with rent for the period of November 1, 2019 through October 31, 2020. We need not resolve whether, under these circumstances, the City "accepted" both rent payments because, as explained infra, even if the City accepted the checks, the tenancy was not converted

15

convert Outfront's tenancy at sufferance into a tenancy at will because Outfront's Amended Lease was not terminated for nonpayment of rent. In support of its contention, the City relies on *Solon Automated Svcs.*, 221 Ga. App. 856.

In *Solon Automated Svcs.*, the tenant refused to vacate after the lease expired. 221 Ga. App. at 857. The landlord continued to accept rent from the holdover tenant and subsequently filed a dispossessory action based on the tenant's refusal to vacate. Id. The trial court concluded that the tenant was a tenant at sufferance despite the landlord's acceptance of rent, and this Court affirmed. Id. at 857, 860 (3) (c). We reasoned that the landlord's acceptance of rent did not convert the tenancy at sufferance to a tenancy at will because the lease was *not* terminated for nonpayment of rent. Id. at 860 (3). Because the lease was terminated for other reasons and the tenant was holding over beyond the termination of the lease, we concluded that "acceptance of the rent did not estop [the landlord]" from treating the tenant as a tenant at sufferance and evicting him without statutory notice of termination. (Punctuation omitted.) Id.

We agree with the City that the present case is controlled by the reasoning of *Solon Automated Svcs*. As in that case, the Amended Lease was not terminated based

into a tenancy at will.

16

on the nonpayment of rent. Because the Amended Lease was terminated for a different reason (the City's purchase of the Property) and Outfront was holding over beyond the termination of the Amended Lease, the City's acceptance of the two rent checks from Outfront did not estop the City from treating Outfront as a tenant at sufferance. See *Solon Automated Svcs.*, 221 Ga. App. at 860 (3) (c).[10]

(ii) Outfront further asserts that its tenancy at sufferance was converted into a tenancy at will because prior to filing the Dispossessory Action, the City engaged in settlement negotiations with Outfront over removing the two billboards from the Property, in addition to several other billboards located around the City, in return for Outfront obtaining permission to install a single LED billboard at a different location. Outfront cites to no legal authority, and we have found none, indicating that settlement negotiations between a landlord and holdover tenant for the removal of the tenant from the premises indicates that the landlord has granted permission, express or implied, for the tenant to remain on the premises beyond the term of the lease. Nor

---

[10] We also note that the second rent check was tendered to and deposited by the City after the commencement of the Dispossessory Action. "[A] landlord has a right to accept rent from a tenant holding over during the pendency of dispossessory proceedings, and such acceptance does not change the nature of the tenancy from one at sufferance to one at will." *Chouinard v. Leah Enterprises*, 205 Ga. App. 206, 208 (1) (422 SE2d 204) (1992).

17

did the affidavits submitted by Outfront reflect that the City granted such permission. In this regard, Outfront's counsel averred that at no point did anyone with or on behalf of the City "express to [him] a contention that Outfront . . . was not entitled to remain in possession of the property at issue." And, Outfront's real estate representative averred that the City's staff "did not object to the presence" of the billboards during settlement discussions and that at no point did anyone from the City "indicate to [her] or anyone else at Outfront" that the billboards "were not permitted to remain on the . . . Property until the condemnation . . . was resolved through settlement." But a landlord's silence is insufficient to show that a tenant was granted permission to remain on the premises. See *Drury*, 328 Ga. App. at 42 (2). Because there was no evidence that the City took any "affirmative action" as part of the settlement negotiations that expressly or implicitly granted Outfront permission to remain on the Property, the parties' negotiations did not convert the tenancy at sufferance into a tenancy at will. (Citation and punctuation omitted.) Id.

Accordingly, the uncontroverted evidence of record shows that Outfront was and remained a tenant at sufferance following the City's purchase of the Property and the termination of the Amended Lease. Outfront therefore was not entitled to 60-days notice of termination under OCGA § 44-7-7. See *Drury*, 328 Ga. App. at 44-45 (2).

18

(c) *Demand for Possession.* Outfront further contends that the City's dispossessory claim failed as a matter of law because the City did not establish that it made a proper demand for possession upon Outfront before initiating the Dispossessory Action. According to Outfront, the April 12 Letter constituted an insufficient demand for possession because it was simply a settlement offer and because it was sent to Outfront's counsel rather than to Outfront directly at its address specified in the Amended Lease. We do not agree.

Although a demand for possession must be made upon the tenant before dispossessory proceedings can be initiated, the statutory scheme "does not require that the demand be in any certain form." *Stephens v. Housing Auth. of City of Atlanta*, 163 Ga. App. 97, 97 (293 SE2d 53) (1982). See OCGA § 44-7-50 (a). Here, the City's April 12 Letter did not simply make a settlement offer to Outfront, but rather stated that if Outfront did not remove the billboards from the Property within 14 days, the City would initiate dispossessory proceedings. Because a letter directing a tenant to vacate the premises constitutes a sufficient demand for possession, see *Twin Tower Joint Venture v. American Mktg. & Communications Corp.*, 166 Ga. App. 364, 366 (2) (304 SE2d 493) (1983), the City's April 12 Letter met the statutory demand requirement.

The fact that the April 12 Letter was sent to Outfront's counsel rather than directly to Outfront does not change our conclusion. "It is well settled that notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client." *Kahn v. Britt*, 330 Ga. App. 377, 381 (2) (b) (765 SE2d 446) (2014). See *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 630-631 (1) (a) (466 SE2d 872) (1995). The April 12 Letter from the City's counsel to Outfront's counsel were sent in the context of ongoing communications between counsel during the course of the then still-pending Condemnation Action, and "[f]rom the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client." (Citation and punctuation omitted.) *Tranakos v. Miller*, 220 Ga. App. 829, 834 (1) (470 SE2d 440) (1996). The demand for possession delivered to Outfront's counsel thus was sufficient under the circumstances. See *Proffitt v. Housing Sys.*, 154 Ga. App. 114, 114 (1) (267 SE2d 650) (1980) (demand for possession served upon holdover tenant's counsel during pendency of litigation constituted sufficient notice to the tenant).

Outfront further contends that the trial court erred in considering the April 12 Letter in support of the City's motion for summary judgment because it was attached

as an exhibit to a supplemental affidavit of the City Manager that was filed less than 30 days before the hearing.[11] As pointed out supra, affidavits submitted as evidence in support of a motion for summary judgment must be filed at least 30 days before the hearing on the motion. See OCGA §§ 9-11-6 (d); 9-11-56 (c); *Cordell*, 295 Ga. App. at 405 (1) (b). "[T]he filing requirement is not waived unless the opposing party acquiesces in the use of the untimely materials or the party seeking to file a late affidavit seeks and obtains an extension from the court pursuant to OCGA § 9-11-6 (b) to extend the time for filing." *U.S. Traffic Corp. v. Turcotte*, 246 Ga. App. 187, 188 (2) (539 SE2d 884) (2000). "Any such extension of time within which to file supporting affidavits should also ensure that the party opposing the motion will have 30 days within which to respond. The value to be secured by these rules is the opposite party's opportunity to respond and resist final judgment being entered against him on the merits." (Citations and punctuation omitted.) *McIntosh v. McLendon*, 162 Ga. App. 220, 220 (1) (290 SE2d 157) (1982). Harmless error analysis also can be applied in this context. See *Porter Coatings v. Stein Steel &*

_____

[11] The supplemental affidavit was filed on December 14, 2018, and the hearing was conducted on December 19, 2018.

21

*Supply Co.*, 247 Ga. 631, 632 (3) (278 SE2d 377) (1981) (requirement that summary judgment movant file supporting materials at least 30 days before hearing "does not preclude a finding of harmless error, waiver, estoppel, or acquiescence in the trial court's consideration of supporting material not timely filed").

Although the City did not seek an extension of time to file the supplemental affidavit and exhibits in accordance with OCGA § 9-11-6 (b), the trial court indicated at the summary judgment hearing that it would defer ruling until Outfront had a full 30 days to respond to late-filed materials, and the court ultimately did not enter its summary judgment order until 11 months after the hearing. During that time period, Outfront did not file any opposing affidavits or otherwise respond to the City Manager's supplemental affidavit that included as an exhibit the April 12 Letter.

The present case is factually similar to and is controlled by *McIntosh*, 162 Ga. App. at 220 (1), where we affirmed the trial court's consideration of affidavits filed by the plaintiff in support of his summary judgment motion that were submitted on the day of the hearing without a proper showing by the plaintiff to justify the late filing. We pointed out that at the hearing, "the defendant was instructed that a ruling on the motion would be deferred in order to give him an opportunity to file opposing affidavits, and the court did not issue its ruling until two months later, during which

22

period the defendant made no response of any kind." Id. We concluded that "[s]ince the trial court thus insured that the defendant had a minimum of 30 days to meet and controvert the assertions on which the motion for summary judgment was based, . . . the procedure [employed by the trial court] fully vindicated the defendant's rights and establishe[d] no cause for reversal." Id. Based on the reasoning of *McIntosh*, we conclude that the trial court did not err in considering the City Manager's supplemental affidavit, which included the April 12 Letter as an exhibit, and thus in concluding that the City made a proper demand for possession upon Outfront before initiating the Dispossessory Action.

For the all of the aforementioned reasons, Outfront has failed to show any error by the trial court in its summary judgment rulings pertaining to the Dispossessory Action. We thus affirm the trial court's summary judgment order to the extent that it granted the City's motion for summary judgment on the City's dispossessory claim and denied Outfront's cross-motion for summary judgment on that claim.

2. Outfront also contends that the trial court erred in granting summary judgment to the City on Outfront's counterclaim for just and adequate compensation. The trial court granted summary judgment to the City on the counterclaim on the grounds that (a) Outfront waived and assigned all of its rights to seek just and

adequate compensation in Paragraph 15 of the Amended Lease and (b) the City voluntarily dismissed the Condemnation Action against Outfront and thus never condemned the Property. We agree with Outfront that the trial court erred in granting summary judgment to the City on the asserted grounds.

The Georgia Constitution provides that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." 1983 Ga. Const. Art. I, Sec. 3, Para. I.

> Direct condemnation proceedings are provided for by statute. If the public authority does not proceed directly to condemn, the injured citizen, nonetheless has a right to compensation under the state constitution. A cause of action will lie. The measure of damages has been established by the cases. Such an action has been called an "inverse condemnation" action.

(Citations omitted.) *Powell v. Ledbetter Bros.*, 251 Ga. 649, 650 (2) (307 SE2d 663) (1983), overruled in part on other grounds by *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990). As our Supreme Court has explained, "[t]he Georgia courts have long understood the Takings Clause – which specifically prescribes just and adequate compensation as the remedy for an uncompensated taking – to imply

24

a right of action against the government." *Lathrop v. Deal*, 301 Ga. 408, 426 (III) (A) (801 SE2d 867) (2017).

"Damages recoverable in an inverse condemnation are a substitute for the damages recoverable in a condemnation proceeding, and are measured by the same standard." *Dept. of Transp. v. Edwards*, 267 Ga. 733, 737 (1) (b) (482 SE2d 260) (1997). And, "the right of the owner to recover for damage done to his property [is] inclusive of damages to every species of property, real and personal, corporeal and incorporeal." (Punctuation omitted.) *Pribeagu v. Gwinnett County*, 336 Ga. App. 753, 757 (1) (785 SE2d 567) (2016), quoting *Bowers v. Fulton County*, 221 Ga. 731, 737 (2) (146 SE2d 884) (1966).

"A leasehold interest is 'property' for which the leaseholder is entitled to receive compensation when his interest is taken or damaged for a public purpose." *Bill Ledford Motors v. Dept. of Transp.*, 225 Ga. App. 548, 549 (484 SE2d 510) (1997). See *Stuttering Foundation v. Glynn County*, 301 Ga. 492, 498 (2) (a) (ii) (801 SE2d 793) (2017) (noting that "the value of a tenant's contract right under a lease to possess and use the condemned property may constitute an additional aspect of the taking over and above the property rights taken from the fee simple owner"). Moreover, a lessee can seek to recover the costs of removing equipment, fixtures, and

supplies from the condemned property. See *State Highway Dept. v. Clark*, 123 Ga.

App. 627, 629 (6) (181 SE2d 881) (1971); *DeKalb County v. Fulton Nat. Bank*, 156

Ga. App. 253, 253 (1) (274 SE2d 649) (1980). And, in certain circumstances, a lessee

can recover business losses resulting from the taking. See *Lil Champ Food Stores v.*

*Dept. of Transp.*, 230 Ga. App. 715, 718 (4) (498 SE2d 94) (1998); *Dept. of Transp.*

*v. Hillside Motors*, 192 Ga. App. 637, 642 (5) (385 SE2d 746) (1989).

"Nevertheless, absent a public policy interest, contracting parties are free to

contract to waive numerous and substantial rights. Thus, a lessee may in the lease

assign away or waive its right to just and adequate compensation in any type of

condemnation proceedings, which assignment or waiver we will enforce."

(Punctuation and footnotes omitted.) *McGregor v. Board of Regents of Univ. Sys. of*

*Ga.*, 249 Ga. App. 612, 613 (548 SE2d 116) (2001). In determining whether there was

such an assignment or waiver, we focus on the language of the lease, bearing in mind

that "[t]he interpretation of [a] lease provision should be governed by the intent of the

parties as expressed in the entire lease contract." *Dept. of Transp. v. Calfee Co. of*

*Dalton*, 202 Ga. App. 299, 301 (1) (414 SE2d 268) (1991). Where the lease terms are

clear and unambiguous, courts "look to the lease alone to find the intention of the

parties." Id. And, "a [lease] should not be construed in a manner that would render

any of its provisions meaningless or mere surplusage." (Citation and punctuation omitted.) *Brazeal v. Newpoint Media Group*, 331 Ga. App. 49, 53 (769 SE2d 763) (2015). "Not to be neglected, however, is the rule that provisions in leases which result in a forfeiture of a tenant's possessory rights will be strictly construed against the lessor." (Emphasis omitted.) *Calfee Co. of Dalton*, 202 Ga. App. at 301 (1). Generally, construction of a lease is a question of law for the court. *Longstreet v. Decker*, 312 Ga. App. 1, 3 (1) (717 SE2d 513) (2011).

Guided by these legal principles, we turn to the trial court's grounds for granting summary judgment to the City on Outfront's counterclaim.

(a) The trial court concluded that Outfront's counterclaim for just and adequate compensation failed as a matter of law based on the waiver and assignment provisions contained in Paragraph 15 of the Amended Lease. Paragraph 15 expressly provided that in the event of the sale of the Property to a public body vested with the power of eminent domain, Outfront would "not be entitled to receive any part of the condemnation award or purchase price associated with the value of the real property itself," but that Outfront would "retain[ ] and shall be entitled to receive compensation for its remaining interests in the Premises related to its trade fixtures, fixtures, personal property, intangibles and business from the condemning authority

27

directly." Paragraph 15 further provided that Outfront "hereby assigns to [WB] the right to receive compensation for any leasehold interest which [Outfront] may have in the Premises so condemned."

Based on the plain language of Paragraph 15, Outfront waived and assigned to WB its right to recover any compensation for the taking of its leasehold interest in the Property from the City, and thus any right to compensation for loss of its possessory right to occupy the area of the Property accommodating the base and footings for its billboards and the air space above. See *Henson v. Dept. of Transp.*, 160 Ga. App. 521 (287 SE2d 299) (1981) (lessee could not recover compensation for leasehold interest in property, where lessee assigned to lessor "any award, claim or demand whatsoever to which the lessee may be entitled by reason of such taking, other than moving expenses to which lessee may be specially entitled by law"). Notably, however, Paragraph 15 also expressly preserved the right of Outfront to recover compensation directly from a condemning authority such as the City for the taking of "its remaining interests in the Premises related to its trade fixtures, fixtures, personal property, intangibles and business." Thus, Paragraph 15 establishes on its face that Outfront did not assign or waive *all* of its rights to seek just and adequate compensation from the City. See *Calfee Co. of Dalton*, 202 Ga. App. at 301 (1) (concluding that lease

28

provision "on its face . . . neither waives any and all claims arising from the lease termination nor does it assign any and all condemnation awards or claims, whatsoever, to the landlord"). Compare *McGregor*, 249 Ga. App. at 613-614 (lease provision clearly and unambiguously waived lessee's right to seek any condemnation proceeds from the condemnor and assigned to lessor any proceeds paid by condemnor for leasehold interest). Accordingly, Paragraph 15 did not preclude Outfront from pursuing an inverse condemnation claim against the City for the taking of "its remaining interests in the Premises related to its trade fixtures, fixtures, personal property, intangibles and business."

In concluding that Outfront's inverse condemnation claim was precluded by the waiver and assignment provisions contained in Paragraph 15 of the Amended Lease, the trial court relied on *Simmerman v. Dept. of Transp.*, 167 Ga. App. 383 (307 SE2d 4) (1983). But, in describing the lease at issue in *Simmerman*, this Court noted: "The assignment makes no distinctions: all the lessee's right or interest in *any* compensation for condemnation is assigned to [the lessor] to collect or not as [lessor] chooses." (Emphasis in original.) Id. at 384 (1). In contrast, Paragraph 15 of the Amended Lease *does* make distinctions: it expressly carves out an exception to the rights and interests that Outfront assigned to WB for Outfront's trade fixtures,

29

fixtures, personal property, intangibles, and business. Hence, Paragraph 15 is materially dissimilar to the lease provision at issue in *Simmerman*.

The City, however, argues that the trial court's summary judgment ruling should be affirmed in light of the clause in Paragraph 15 of the Amended Lease stating that the Amended Lease would be immediately terminated if the Property was purchased by a public body vested with the power of eminent domain. According to the City, Paragraph 15 caused the automatic termination of the Amended Lease in its entirety when the City purchased the Property from WB, thereby extinguishing any and all compensable interests that Outfront may have had in the Property. The City cites to *Lamar Co. v. State*, 256 Ga. App. 524 (568 SE2d 752) (2002), but in that case, the lease contained a cancellation provision that authorized the lessor to cancel the lease in connection with the sale of the property and did not contain language preserving any rights of the lessee upon cancellation of the lease. Id. at 525 (1). In contrast, while Paragraph 15 contained language terminating the Amended Lease upon sale of the property to a condemning authority, it also contained language preserving the right of Outfront to seek compensation from that authority for the taking of its remaining interests in the Property related to its trade fixtures, fixtures,

personal property, intangibles, and business. Hence, *Lamar Co.* is clearly distinguishable.[12]

The present case is more similar to *Franco's Pizza & Delicatessen v. Dept. of Transp.*, 178 Ga. App. 331, 332 (1) (343 SE2d 123) (1986), where we construed a provision terminating the lease upon condemnation of the property as terminating the lease "as between the parties to the lease only," given a sentence in the termination provision preserving the right of the lessee to recover compensation and damage caused by condemnation. Given similar language in Paragraph 15 preserving the right of Outfront to recover compensation for the taking of its remaining interests in the Property, we conclude that the language in the Amended Lease terminating the lease

---

[12] The City also relies on *Emanuel Tractor Sales v. Dept. of Transp.*, 257 Ga. App. 360 (571 SE2d 150) (2002), which contained a provision automatically terminating the lease in the event of condemnation of the property or sale of the property to the condemning authority if the condemnation or sale would restrict the lessee's ability to conduct its business. See id. at 361. As an initial matter, one of the three appellate judges in *Emanuel Tractor Sales* concurred only in affirming the judgment, id. at 367-368, and thus the case is physical precedent only and not binding on this Court. See Court of Appeals Rule 33 (a) (2); *Groth v. Ace Cash Express*, 276 Ga. App. 350, 353 (623 SE2d 208) (2005). In any event, the termination provision in the lease in *Emanuel Tractor Sales* did not contain a clause preserving the right of the lessee to seek compensation from the condemning authority in the event of termination of the lease. Thus, *Emanuel Tractor Sales* is distinguishable from the present case.

upon sale of the Property to a condemning authority did not extinguish all of Outfront's rights to seek just and adequate compensation from the City. See id.

(b) The trial court also concluded that Outfront's inverse condemnation claim failed as a matter of law because the City dismissed its Condemnation Action against Outfront. However, as noted above, the fact that a governmental entity declines to proceed with a formal condemnation action does not foreclose a property owner from pursuing an inverse condemnation action where the owner can prove that its property has been taken by the government without just and adequate compensation. See *Powell*, 251 Ga. at 650 (2). Thus, if Outfront is able to prove that there has been a taking of its remaining interests in the Property related to its trade fixtures, fixtures, personal property, intangibles, and business, it can succeed on its inverse condemnation claim even if the City dismissed the Condemnation Action.

For these combined reasons, we conclude that the trial court erred in determining that Outfront was precluded from pursuing an inverse condemnation counterclaim against the City for the taking of its remaining interests in the Property related to its trade fixtures, fixtures, personal property, intangibles, and business based on Paragraph 15 of the Amended Lease and based on the fact that the City had dismissed the Condemnation Action against Outfront. Accordingly, we reverse the

32

trial court's grant of summary judgment to the City on Outfront's inverse condemnation counterclaim.[13]

*Case No. A20A1269*

3. Outfront contends that the trial court erred in denying its motion for payment of fees and expenses under OCGA § 22-1-12. We agree.

After the City voluntarily dismissed the Condemnation Action against Outfront, Outfront filed a motion for payment of its costs and expenses under OCGA § 22-1-12 in which it sought attorney fees, appraisal fees, and costs incurred as a result of the Condemnation Action. In support of its motion, Outfront's lead counsel submitted an affidavit with attached exhibits detailing the fees and costs that Outfront had incurred. The City responded that Outfront was not entitled to recover its fees and costs because WB's conveyance of the Property to the City automatically terminated the Amended Lease and "divested [Outfront] of any possessory interest in either the Sign or the Premises." The trial court agreed with the City and denied Outfront's motion.

---

[13] We express no opinion as to whether Outfront ultimately can succeed on such an inverse condemnation claim against the City or whether the City could move for summary judgment on some alternative basis not discussed herein.

33

The trial court erred in denying Outfront's motion for fees and expenses under OCGA § 22-1-12. That statute provides that when a condemning authority abandons a condemnation proceeding that it instituted to acquire real property, the trial court

> shall award the owner of any right or title to or interest in such real property such sum as will in the opinion of the court reimburse such owner for his or her reasonable costs and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings[.]

OCGA § 22-1-12 (2). As our Supreme Court has explained,

> OCGA § 22-1-12 . . . was enacted as part of the 2006 "Landowner's Bill of Rights and Private Property Protection Act," which expanded property owners' protections against condemnation rather than limiting those safeguards. . . . What the General Assembly did with OCGA § 22-1-12 is to reallocate the costs imposed on the condemnor and the condemnee if the condemnor abandons a condemnation action at any point. If entitled to voluntarily dismiss unilaterally and without prejudice, plaintiffs, including condemnors, generally may do so even if the dismissal is alleged to be in bad faith and causes inconvenience and irritation to the defendant. But unlike most plaintiffs, condemnors that abandon their actions must now pay the property owner's reasonable costs and expenses actually incurred because of the condemnation proceedings, including attorney, appraisal, and engineering fees.

(Citations, punctuation, and emphasis omitted.) *Dillard Land Investments v. Fulton County*, 295 Ga. 515, 522-523 (2) (c) (761 SE2d 282) (2014).

Here, the City sought to avoid paying fees and expenses to Outfront for its abandonment of the Condemnation Action solely on the ground that Outfront no longer had any interest in the Property based on Paragraph 15 of the Amended Lease, and the trial court denied Outfront's motion on that basis. But, as explained supra in Division 2, Paragraph 15 expressly provided that Outfront "retain[ed] and . . . [was] entitled to receive compensation for its remaining interests in the Premises related to its trade fixtures, fixtures, personal property, intangibles and business from the condemning authority directly." Because some of Outfront's interests in the Property were preserved under Paragraph 15 of the Amended Lease, the trial court erred in denying Outfront's motion for the payment of fees and expenses under OCGA § 22-1-12.

*Judgment affirmed in part and reversed in part in Case No. A20A1420. Judgment reversed in Case No. A20A1269. Gobeil and Pipkin, JJ., concur.*